STATE EX REL. MELTON TAX COLLECTOR *v.* ROMBACH ET AL.

[73 South. 731, Division A.]

1. LICENSES. *Discrimination. Statute. Validity.*

Section 1, chapter 112, Laws 1914, imposing a privilege tax of two thousand dollars upon a money loaning business, where a greater rate of interest than 20 per cent. per annum is charged, is not violative of any provision of the state or federal Constitutions, either because the tax therein provided is imposed only on a business wherein a greater rate of interest than 20 per cent. per annum is charged, or because the tax is imposed only on a business made unlawful by another statute.

2. SAME.

Liability under section 1, Laws 1914, chapter 112, depends solely on that section and is not affected by the invalidity of other sections of the act, since this section is complete in itself and the act provides that if any section or part of the act shall be held to be unconstitutional or invalid, that fact shall not invalidate any other part of the act.

3. LICENSES. *Privilege tax. Persons liable. Agent.*

Under Laws 1914, chapter 112, section 1, imposing a privilege tax of two thousand dollars upon money loaning business, where a greater rate of interest than 20 per cent. per annum is charged, the manager and agent of the person conducting the business, who has no interest in the business is not liable for the tax.

112 Miss.—47

APPEAL from the chancery court of Madison county. HON. O. B. TAYLOR, Chancellor.

Suit by the state on relation of E. C. Melton, tax collector, against F. T. Rombach and others. From a judgment sustaining a demurrer to the bill and a decree for defendants, relator appeals.

The appellant, tax collector of Madison county, Miss., filed his bill in chancery against the appellees praying an attachment against one of the appellees, a nonresident, and for a decree for the privilege license fixed by section 1 of chapter 112 of the Laws of 1914. The defendants demurred, and demurrer was sustained, and an appeal taken from the decree in favor of the defendants. The section referred to reads as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that all persons, firms, or corporations doing a money loaning business, where a greater rate of interest than twenty per centum per annum is charged, whether secured or unsecured, or whether by taking bills of sale absolute or conditional shall pay a privilege tax to the state of two thousand dollars per annum, but nothing in this act shall be construed to validate, or make enforceable, or render lawful any contract for a loan of money at a greater rate of interest than twenty per centum, whether made before or after the passage of this act."

*Geo. H. Etheridge,* Assistant Attorney-General, for appellant.

The act of 1914 is founded both upon the police power of the state and the taxing power of the state, the taxing power being used in aid of the police power. The specific question at issue as to the power of the legislature to impose a specific tax on illegal business without legalizing the business has been settled contrary to the contention of the appellee, by many cases. See the case of *Foster* v. *Spee,* 111 S. W. 925, 22 L.

R. A. (N. S.) 949; *Youngblood* v. *Sexton,* 32 Mich. 406,
20 Am. St. Rep. 654; *Wells* v. *State,* 126 Ind. 71, 9 L.
R. A. 664, 25 N. E. 883; *State* v. *Funk,* 27 Minn. 318,
7 N. W. 359; *State* v. *Doom,* R. M. Charlt. (Ga.) 1;
*State* v. *Hipp,* 38 Ohio St. 199; *Butzman* v. *Whitbeck,*
42 Ohio St. 223; *State* v. *Tucker,* 45 Ark. 55; *State* v.
*Brown,* 41 La. Ann. 771, 6 So. 638, 5 Wall. 462, 18 L.
Ed. 497; *Veazie Bank* v. *Fenno,* 8 Wall. 533, 19 L. Ed.
482; *Vermont Loan & Trust Co.* v. *Hoffman,* 5
Idaho, 376, 95 Am. St. Rep. 186, 49 Pac. 314.

In many of the American states the taking of usury
is made a crime.　29 Am. & Enc. of Law, 560; *Young-
blood* v. *Birmingham Saving & Trust Corporation,* 95
Ala. 521, 12 So. 579; 44 Century Digest, title "Usury,"
page 2499, sections 441 to 442;　19 Dec. Dig. title
"Usury," section 146; *Ex Parte Berger,* 193 Mo. 16,
3 L. R. A. (N. S.) 530, 112 Am. St. Rep. 472; *Booth*
v. *People,* 186 Ill. 43, 78 Am. St. Rep. 229, and case
note to this report in the 87 Am. St. Rep.

The rule of the power of the states under the police
power to prohibit acts deemed hurtful to the public
morals, health, or general welfare is splendidly stated
in the note to this case, in 78 American State Reports,
page 237. *Burdick* v. *People,* 149 Ill. 600, 41 Am. St.
Rep. 329; *State* v. *Powell,* 58 Ohio St. 324; *State* v.
*Harrington,* 68 Vt. 622, 627; *People* v. *Wemple,* 27 Am.
St. Rep. 565; *Ford* v. *State,* 85 Md. 465, 60 Am. St.
Rep. 337; *Harbinson* v. *Knoxville Iron Co.,* 103 Tenn.
421, 76 Am. St. Rep. 682; *Ford* v. *State,* 85 Md. 465,
60 Am. St. Rep. 337.

The question of the power of the state to impose
privilege taxes is almost without limit.　The supreme
court of Mississippi in the case of *Coco Cola* v. *Skill-
man,* 91 Miss. 683, says that the police power to
impose taxes is one so unlimited in force and so
searching in extent that the court scarcely ventures
to declare that it is subject to any limits whatever,
except such as rest in the discretion of the authority

which exercised it. It reaches to every trade or occupation, to every object or industry, use or enjoyment. In 2 Cooley on Taxation, page 1094, it is stated: "The sovereignty may, in the discretion of its legislature, levy a tax on every species of property within its jurisdiction, or, on the other hand, that it may select any particular species of property and tax that only, if in the opinion of the legislature that course will be wiser.

Our supreme court in the case of *Clarksdale Insurance Agency* v. *Cole,* 87 Miss. 637, 60 So. 228, held that section 112 of our Constitution, providing for equality and uniformity in taxation, applies only to *ad valorem* tax for general purposes and has no relation to privilege taxes. This holding was upheld fully by the supreme court in the case of *State* v. *Lawrence,* 66 So. 745.

It is also argued that the act is void because there is a lack of uniformity and equality according to value in the property which is sought to be taxed. As we have already said, it is not the property taxed, but the privilege of using the property, motor vehicles and cycles, on the public roads which is taxed. The equality and uniformity clause of the Constitution applies only to *ad valorem* taxes for general purposes, and has no relation to privilege taxes. In the case of *Clarksdale Insurance Agency* v. *Cole,* 87 Miss. 637, 40 So. 228, a statute imposing a privilege tax on each insurance agency and a tax on each insurance agent was upheld as constitutional. *Daily* v. *Swope,* 47 Miss. 367. It is also settled that it is competent for the legislature to tax any occupation or calling, according to its discretion, and if all of the same class are taxed alike, the constitutional mandate is complied with. *Bank* v. *Worrell,* 67 Miss. 47, 7 So. 219; *Holberg* v. *Macon,* 55 Miss. 112.

No infraction of the due process of law clause of either the state or the National Constitution is made

by the law in question in this statute. The question of
due process of law as applied to taxation is discussed
in Gray's Limitation on Taxing Power, sections 1122 to
1125, inclusive, and is discussed by the United States
supreme court in numerous cases referred to and
especially in the case of *Murrey's Lessee* v. *Hoboken
Land & Investment Co.*, 18 How. (U. S.) 272, 15 L.
Ed. 372; *Wilson* v. *North Carolina*, 42 L. Ed. (U. S.)
865; *People* v. *Obrien*, 2 L. R. A. 258, but insofar as
notice of the imposition of the tax is concerned, none
is necessary, because the legislature has the taxing
power and no person is entitled to a hearing before the
legislature on this proposition. *Hagar* v. *Reclamation
District*, 111 U. S. 71, 28 L. Ed. 569, 4 Sup. Ct. Rep.
663; *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed.
335; *Rodge* v. *Kelly*, 88 Miss. 217; *Woodson* v. *Hop-
kins*, 85 Miss. 171; 37 So. 1000; 38 So. 298; 70 L. R.
A. 645; *Gunning* v. *Chicago*, 177 U. S. 183, 44 L. Ed.
725.

The purposes for which the present law was enacted
are so patent and the evils intended to be suppressed
are so glaring that the law should be sustained if there
is any reasonable way to sustain it.

*W. H. & R. H. Powell,* for appellees.

We presume that it will be conceded that the decree
must be affirmed as to Frank T. Rombach, as it is
charged in the bill that he was a nonresident of the
state, had nothing to do with the lending of money;
that all loan contracts were taken in the name of Ed.
Rombach, and that he was the only one who did the
business for which a privilege tax is required. If not,
it must be conceded that Ed. Rombach is not liable
for the privilege tax, as it is charged in said bill that
he was merely the manager and agent of Frank T.
Rombach.

So we take it that appellant will concede that the
case should be affirmed as to either Frank or Ed.

Rombach, for certainly both are not liable for the privilege tax.

We will now endeavor to demonstrate that neither is liable and that the several demurrer was properly sustained and that the case should be affirmed in its entirety.

The bill shows that the business of appellees was jewelry, and not that they were engaged in or "doing a money loaning business," and hence they cannot be held for the two thousand dollar privilege tax, even if section 1 of said Act is constitutional.

Meaning of words. "Doing business" see 3 Words & Phrases, pages 2155-6-7-9 and 2160; "Doing a plumbing business," *Wilby* v. *State*, 93 Miss. 770; "Engage or engaged in business," 3 Words & Phrases, pages 2392-3-4; "Carry on business," 1 Words & Phrases, pages 979-980-1-2; "Transacting business," 8 Words & Phrases, pages 7058-9; "Business," 1 Words & Phrases, pages 915-16-17-920-1; 20 L. R. A. 186, (Read Second Column). The defendants, or at least one of them, was "doing a jewelry business" and not " doing a money loaning business." The other defendant was doing a jewelry business, and at times loaning money in connection therewith, as a mere sideline.

If we are in error here then we respectfully contend that the court was not in error in sustaining the demurrer because of the unconstitutionality of the act, for the reasons assigned in paragraphs, numbers 11 to 21 of the demurrer.

In the *Kelly Case*, 88 Miss. 209, our court held that the privilege tax on a person doing a money lending business securing the loans by bills of sale or designated kinds of personal property, such tax not being inposed on lenders otherwise securing their loans is class legislation and void, being violative of state Constitution 1890, sec. 14, providing that a person shall not be deprived of life, liberty or property without

due process of law, and of United States Constitution, Fourteenth Amendment, sec. 1, providing that a state shall not deprive any person of life, liberty or property without due process of law, nor deny to any person the equal protection of laws. Section 2 of the act in question is clearly condemned by this decision. This decision construed Laws 1904, chapter 76, page 71, sec. 57, which imposed a tax of five hundred dollars on those who loaned money on Furniture, Jewelry, Silver, Glass, Plate or Ware, the court, in the concluding paragraph on page 218 said:

"It may be that no statute is needed to prohibit the kind of contracts condemned in *Woodson* v. *Hopkins, supra,* since the contracts condemned in that case were not contracts condemned because of usury, but contracts condemned, as clearly stated in that opinion, because they were so grossly exhorbitant and inquitous in all their features as to be void as against public policy. There is no need of a statute to prohibit contracts and business which the courts have declared void as against public policy. If, however, it was the purpose of the legislature to withdraw such contracts from the condemnation of being against public policy upon the condition of the payment by persons and corporations engaged in them of a very high license, it would still remain true that the statute enacted in that view must conform to the provisions of the Constitution of this state and the United States referred to."

We say this paragraph is conclusive of case at bar in favor of appellees. The Law of 1914, chapter 112, page 91, is void also because it was clearly intended to be prohibitory, and is therefore in conflict with the said provisions of said constitutions. A purely revenue statute must not be unreasonable and prohibitory in its effect. This statute cannot be upheld on the ground that it is a police measure.

Even if the business condemned fell within the police power, yet the law was intended as a revenue measure and it must be confined to that and it cannot therefore be said to be a regulation under the police power of the state. It does not prohibit the business or out law it or declare that it is against the public policy of the state as does the anti-trust law. *Newman Case,* 59 Miss. 385; *Pitts Case,* 72 Miss. 184.

This law presents the anomaly and paradox of levying a tax for the privilege of doing business and then forbids the doing of that business, in effect, by making contracts entered into in such business non-enforceable.

"While the state legislature has broad powers to classify persons and property for legislative purposes, the mere fact of classification is insufficient to relieve statutes from the operation of the equality clause of the Constitution."

"A classification of persons or property in statutes must be based on some reasonable ground and some real difference, which bears a just and proper relation to the object sought to be accomplished; mere arbitrary selection and discrimination against persons and classes of unusual character is unconstitutional." *Adams Case,* 53 So. 692, and cases cited.

There is nothing *"malum in se"* in lending money at any rate that may be agreed upon by the lender or borrower. In fact, in 1873 it was the public policy of the state to deny the plea of usury. There was no such thing as usury in the lending of money by written contract, except in cases of decedents, minors and insane persons. See chapter 77, Laws 1873, page 81. So therefore it is merely *"malum prohibitum."*

The legislature in chapter 145, Code 1906, sec. 5002, (I) in dealing with "trusts and combines" declared that they were "inimical to the public welfare, unlawful and a criminal conspiracy." Not so in chapter 112, Laws 1914.

Clearly, this act is unconstitutional and void. " 'Tis true, 'Tis pity, and pity 'tis true" that the legislature was floundering about in the dark in enacting this law and they sought to avoid the consequences of their act by stating that "if for any reason any section or part of this act shall be held unconstitutional or invalid, then that fact shall not invalidate any other part of this act, but the same shall be enforced without reference to the part so held to be invalid."

This precaution of the legislature will not avail, because the portions that sting are clearly unconstitutional and the remainder, if upheld, will occupy a place of "*innocuous dessuetude.*"

The argument of appellant in court below will not avail, as section 2 is clearly unconstitutional because of the special character of loans, the presumption of guilt is made to arise, and the reference to section 2 in section 3 being destroyed, makes section 3 inoperative and non-condemnatory of any act because of the elimination of the requirement of section 2.

Besides, section 2 destroys the presumption of innocence merely because certain classes of property are taken as security. Again section 3 in the cumulative imposition of fines and imprisonments for a petty misdemeanor is in violation of the sections of the Constitution cited supra. The district attorney, in the trial of the criminal case, admitted to the court that section 1 was unconstitutional.

In *Fant.* v. *Gibbs,* 54 Miss. 411 and 412, the court said: "While it is true that one portion of a law may be upheld while the rest is overthrown, this is only true when they are so far independent provisions that it may be presumed that the legislature intended one to subsist, even though the balance perished."

And again, "the principle is that when a particular clause of a statute is manifestly based upon certain other clauses, which are pronounced unconstitutional,

it will fall with them, though itself not obnoxious to constitutional objections."

So we say that if section 2 is eliminated, then section 3 must fall even though it is of itself constitutional, because section 3 cannot become operative without the provisions of section 2.

SMITH, C. J., delivered the opinion of the court.

We are of the opinion that the bill sufficiently alleges that appellee Frank T. Rombach is engaged in "doing a money loaning business," and that section 1, chapter 112, Laws 1914, does not violate any provision of the state or Federal Constitutions, either because the tax, therein provided is imposed only on a business wherein a greater rate of interest than twenty per cent. per annum is charged, or because the tax is imposed upon a business made unlawful by another statute. If authority is desired for the last of these propositions, it may be found in *Foster* v. *Speed,* 120 Tenn. 470, 111 S. W. 925, 22 L. R. A. (N. S.) 949, 15 Ann Cas. 1066.

Appellees' liability depends solely upon section 1 of the statute, which is complete in itself; consequently we are not called upon to determine whether the other sections thereof violate either the Federal or state Constitutions, for the reason that the statute itself provides that:

"If for any reason any section or part of this act shall be held to be unconstitutional or invalid, then that fact shall not invalidate any other part of this act, but the same shall be enforced without reference to the part so held to be invalid."

It is alleged in the bill that the business sought to be taxed " is the joint business of said Frank T. and Ed. Rombach, in that the said Ed. Rombach is the manager and agent of his brother." If Ed. Rombach is simply the manager for and agent of his brother,

and the business does not belong to him, he is not liable for the tax. We will reverse and remand the case generally, however, in order that the state may amend the bill in this particular, should it see fit so to do.

*Reversed and remanded.*