O’NIELL, C. J.
 

 This suit is an attack on the constitutionality of the Act 197 of 1926, p. 324, levying the so-called tobacco tax. The plaintiffs are appealing from a-judgment of the district court recalling a temporary restraining order and refusing to grant an injunction to prevent the supervisor of public accounts from enforcing the act. Appellants are retail tobacco dealers. They are citizens and taxpayers in New Orleans, have a long-term lease on the building in which they conduct their business, and paid in the beginning of the year 1926 the license taxes required by the state and the municipality for the privilege of carrying on the business until the end of the year.
 

 The title of the act declares that its object is to levy a tax upon retail dealers in all forms of tobacco and tobacco products,. for the benefit of- the public schools of the state, etc.
 

 The first section of the act declares that there is thereby levied a tax, in the sum as thereinafter set forth, upon tobacco and tobacco products, as defined in the second section of the act, for the benefit of the public schools of the stq^te, which tax shall be paid by and collected from every person, firm, corporation, or association of persons engaged in selling any or all kinds of tobacco, tobacco products, and tobacco substitutes at retail.
 

 The second section declares that the tax shall be one cent for every ten cents, or fractional part thereof, of the retail selling price of all cigarettes, smoking and chewing tobae; co, cigars, cheroots, and snuff made of tobacco,. or any substitute therefor.
 

 The third section declares that the payment of the tax shall -be evidenced by stamps to be
 
 *961
 
 affixed as soon as the goods are received in the retail place of business; that, in the case of cigars and plug tobacco, the stamps must be affixed to the box or container in which or from which the articles are sold; that, in' the case of cigarettes, snuff and smoking and chewing tobacco wrapped in packages, the stamps must he affixed to each package; and that the stamps must be affixed so as to require a continued application of steam or water to remove them, and must be canceled by putting on them the date of affixing.
 

 The fourth section declares that the selling price referred to as the basis for computing the tax means the retail selling price of the article before adding the amount of the tax.
 

 The fifth section declares that the act shall apply only to articles that are the subject of intrastate retail sales, and that it shall not apply to insecticides or liquid sprays in which tobacco is used.
 

 The sixth section makes it the duty of the supervisor of public accounts to administer the law and collect the tax, and, to that end, to buy the stamps and distribute them to the retail dealers, either directly or through agencies to be established by him.
 

 The seventh section declares that the proceeds of the sales of the stamps shall be paid into the state treasury on or before the 10th day of each month and credited to the current school fund, to be distributed and used in the same way and for the same purposes as current school funds derived from other sources are distributed and used.
 

 ■ The eighth section requires all retail dealers in tobacco and tobacco products to keep their invoices,'books, and accounts subject to inspection by the supervisor of public accounts or his authorized agents, 'so that they may ascertain whether the tax is being paid or evaded.
 

 The ninth section declares that a failure on the part of any person, firm, corporation or association of persons subject to the tax to affix or cancel,the required stamp, or to permit the supervisor of public accounts or his authorized agent to examine and inspect the taxable stock, invoices, books, and accounts, shall subject the offender to a fine of $20 for the first offense, $50 for the second, and $100 for each subsequent offense, to be collected by the civil processs thereafter provided in the act. This section of the act also authorizes the supervisor of public accounts to compromise any violation of the section and requires him to preserve a record of any such transaction.
 

 The tenth section provides in detail the civil process for enforcing payment of the tax, obedience of the act, and collection of any fines that may be imposed.
 

 The eleventh section makes it the duty of the supervisor of public accounts to report in detail to the district attorney and to the president of the parish school board any violation of the law occurring in his parish and the terms and conditions of any compromise that may have been made.
 

 The twelfth section provides penalties of fine or imprisonment, or both fine, and imprisonment, for any violation of the act, and declares that such penalties shall not prevent the civil penalties provided for in the ninth section.
 

 The thirteenth section makes it a misdemeanor, subjecting the offender to fine or imprisonment, or both fine and imprisonment, to willfully remove or alter the cancellation of any tobacco tax stamp, or to make or prepare a stamp with intent to use it, or to actually use one after it has already been used, or to willfully or knowingly buy, sell, offer for sale or give away any such counterfeit, washed or restored stamp, or to use or have in one’s possession any counterfeit, washed, restored or altered stamp. ■
 

 The fourteenth section declares that the cost of preparing and distributing the stamps
 
 *963
 
 shall be borne by the state current school fund, and for that purpose appropriates from the fund $50,000 for the fiscal year 1926-27 and $50,000 for the fiscal year 1927-28.
 

 .The fifteenth section is the saving clause, declaring that if any clause, sentence, paragraph or part of the act shall ever be adjudged invalid for any reason, the judgment shall not invalidate, impair or affect any other part of the act.
 

 The sixteenth or last section declares that the act shall go into effect — and so it went into effect — on the 1st day of October, 1926; that the act shall terminate at the end of four years ; and that it is the purpose of this provision that the school system shall have the benefit of the tax for the term of four years only.
 

 Appellants urge several reasons for their contention that the statute is unconstitutional. The first contention is that the tax is a tax on the ownership of tobacco and tobacco products, that is to say, a property tax, and that, as such, it exceeds the limit of 5% mills on the dollar, fixed in the third section of article 10 of the Constitution, viz.:
 

 “Section 3. The rate of state taxation on property for all purposes shall not exceed, in any one year, five and one-quarter mills on the dollar of its assessed, value.”
 

 The second contention is that the statute is violative of the first section of article 10 of the Constitution, requiring that all property taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax. This second eont'ention is a matter of no importance, because it is founded upon the assumption that the tax in contest is a tax on the ownership, or a property tax, and if it is a tax on the ownership, or property tax, it exceeds the limit of 5X,4 mills on the dollar and is therefore violative of the third section of article 10- of - the Constitution. The question, therefore, is-whether the tax is levied on the ownership or on the privilege of selling at retail tobacco and tobacco products.
 

 The title of the act expresses the intention to be to levy the
 
 tax
 
 “upon retail dealers in all forms of tobacco and tobacco products”; that is, to levy a license tax. The first section of the act begins by saying “that there is hereby levied a tax in the sum as hereinafter set forth upon tobacco and tobacco products,” but the sentence ends with saying, “which tax shall be paid and collected as set forth herein, from every person, firm, corporation, association of persons engaged in selling any or all such forms and kinds of tobacco, tobacco products and tobacco substitutes at retail.” Therefore the language of the section levying the tax, taken altogether, leaves no doubt that the tax is levied, not on the right of ownership, but on the right to sell at retail. Being collectable only from persons, firms, corporations and associations of persons engaged in selling tobacco and tobacco products at retail, the tax is an excise or license tax on the privilege of selling tobacco and tobacco products at retail, and not a tax on the tobacco and tobacco products themselves, or on the right to own them.
 

 The second section of the act is also plain enough in that respect. True, the tax is referred to in this section somewhat indifferently as “the tax herein levied and to be collected on all kinds of * * * tobacco and tobacco substitutes,” but, in the same sentence, it is said that the tax is a proportion of the retail selling price of the tobacco and tobacco products. The context leaves no doubt that the tax is not a proportion of the value of the property, or levied upon the right to own it, but a proportion of the retail selling price, levied upon the right to sell it at retail, viz. :
 

 “The tax herein levied and to be collected on all kinds of tobacco * * * shall be 1 (one) cent for each 10 (ten) cents or fractional part thereof of the retail selling price of all ciga
 
 *965
 
 rettes, smoking and chewing tobacco, cigars, cheroots and snuff made of tobacco or any substitute therefor.”
 

 As Mr. Justice Brandéis said, for the court, in Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 292, 41 S. Ct. 274, 65 L. Ed. 645:
 

 “The name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents.”
 

 What characterizes this tax as a license tax, and not a property tax, is that it is collectable only from those who are engaged in the business of selling tobacco and tobacco products at retail and is measured in proportion to the retail selling price.
 

 Even though the retail selling price may be regarded as the value of the article, and the tax therefore as a proportion of the value, that alone would not make the tax a property tax. Gulf Refining Co. v. McFarland, Supervisor of Public Accounts, 154 La. 251, 97 So. 433. The incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectable from the owner of the property unless he is engaged in the business of selling it at retail, and that it is levied and collected then only in proportion, approximately, to the amount of the retail sales. The nature or character, of the tax in that respect is easily distinguished from the turpentine tax that was adjudged a property tax and not a privilege tax !n Thompson, Auditor of Public Accounts, v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 19-18C, 893, Ann. Cas. 1918A, 674, and from the whisky tax that was adjudged a property tax and not an occupation tax in Dawson, Attorney General, v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638.
 

 As it is well settled — and not disputed —that the limit of 514 mills on the dollar, and the uniformity clause, in article 10 of the Constitution, applies, only to ad valorem or property taxes, levied upon the right of ownership, our conclusion that this so-called tobacco tax is not a property tax but a license tax is a conclusion that the statute levying the tax is not violative of either the first or the third section of article 10 of the Constitution.
 

 Appellants’ third point is that, if the tax is intended to be a license tax for the privilege of selling tobacco and tobacco products at retail, it is violative of the eighth section of article 10 of the Constitution because it is not graduated according to the amount.of annual gross sales, to be determined by the licensee’s sworn annual returns, as all other retail dealers’ license taxes are graduated in the Act 205 of 1924 and in the preceding' license laws.
 

 The eighth section of article 10 of the Constitution does not direct or suggest how the Legislature shall grade or classify license taxes on any trade, business, occupation, vocation or profession. In that respect the Legislature is given carte blanche, viz.:
 

 “Section 8. License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural, or horticultural pursuits or in operating sawmills. ' Such license taxes may be classified, graduated or progressive.”
 

 It is true the method of collecting the tobacco tax, by the sale of stamps to be affixed to each package, is an innovation in this state, but it is not violative of any restriction in the Constitution. The tax itself, being an excise on the use" of tobacco, imposing the burden directly on the consumer, is an innovation. The tax is not levied under the police power of the Legislature, to curb the tobacco habit, but under the power of taxation for raising revenue for a’ worthy public purpose. The idea of levying an excise tax
 
 *967
 
 on the consumption of tobacco, in the form of a license tax on the retail sale of it, is not a new one in the United States. As Mr. Justice Brewer pointed out in Patton v. Brady, 184 U. S. 617, 22 S. Ct. 496, 46 L. Ed. 718:
 

 “Ever since the early part of the Civil War there has been a body of legislation, gathered in the statutes under the title of Internal Revenue, by which, upon goods intended for consumption, excises have been imposed in different forms at some time intermediate the beginning of manufacture or production'and the act of consumption. Among the articles thus subjected to those excises have been liquors and tobacco, appropriately selected therefor on the ground that they are not a part of the essential food supply of the nation, but are among its comforts and luxuries.”
 

 This luxury tax levied by the Act 197 of 1926 is a very high license tax, in comparison with the value of the article or the retail selling price. The Legislature deemed it wise to adopt an extraordinary method of making sure of a faithful payment of the tax by the consumer for each and every such article consumed; and it is not our province to inquire into the policy or wisdom of the Legislature in the method of apportioning and collecting the tax. As the learned Justice said also in the case just cited, quoting Cooley on Taxation:
 

 “ ‘The legislative makes, the executive executes, and the judiciary construes, the laws.’ Chief Justice Marshall, in Wayman v. Southard, 10 Wheat. 1, 46, 6 L. Ed. 253, 263. The Legislature must therefore determine all questions of state necessity, discretion, or .policy involved in ordering a tax and in apportioning it; must make all the necessary rules and regulations which are to be observed in order to produce the desired returns and must decide upon the agencies by means of which collections shall be made. ‘The judicial tribunals of the state have no concern with the policy of legislation. That is a matter resting altogether in the discretion of another co-ordinate branch of the gov'ernment. The judicial power cannot legitimately question the policy or refuse to sanction the provisions of any law not inconsistent with the fundamental law of the state.’ Chief Justice Redfield, in Re Powers, 25 Vt. 261, 265. * * * But so long as the legislation is not colorable merely, but is confined to the enactment of what is in its nature strictly a tax law, and so long as none of the constitutional rights of the citizen are violated in the directions prescribed for enforcing the tax, the legislation is of supreme authority. Taxes may be and often are oppressive to the persons and corporations taxed; they may appear to the judicial mind unjust and even unnecessary, but this can constitute no reason for judicial interference.”
 

 In the first section of article 10 of the Constitution it is said in the broadest terms possible; “The power of táxation shall be vested in the Legislature.” In the plenary terms also of the eighth section there is ample authority for the method of apportionment afid collection of the tax as provided for in the Act 197 of 1926, and we find nothing to the contrary elsewhere in the Constitution.
 

 Appellants’ fourth point is that, if this tobacco tax is a license tax, it makes double taxation because, by the general license law (Act 205) of 1924, the Legislature had already imposed upon retail tobacco dealers the annual license tax imposed upon all other retail dealers. •
 

 This tax, being an additional license tax on the business of selling at retail, would be, in a sense, double taxation on the business if the apportionment and method of collection of the tax were not arranged so as to put the burden directly upon the consumer and to make the tax, strictly speaking, an excise; or tax on the consumption of tobacco and tobacco products. As it is, the retail dealers merely serve as collecting agencies. It is not necessary to determine whether such double taxation would be illegal if the tax were imposed directly upon .the retail dealers’ business instead of being an excise levied upon the consumption of tobacco and tobacco products. As to excises, strictly so-called, it was decided in Patton v. Brady, 184 U. S. 619, 22 S. Ct. 497, 46 L. Ed. 719, that there was no fundamental objection to the levying of such a tax more than once on the consumption of the. same articles of commerce, yiz.:
 

 
 *969
 
 “But -why should the power of imposing an excise tax be exhausted when once exercised? It must be remembered -that taxes are not debts in the sense that having once been established and paid all further liability of the individual to the government has ceased. They are, as sáid in Cooley on Taxation, p. 1: ‘The enforced proportional contribution of persons and property, levied by the authority of the state for the support of the government and for all public needs,’ and so long as there exist public needs just so long exists the liability of the individual to contribute thereto. The obligation of the individual to the state is continuous and proportioned to the extent of the public wants.”
 

 In support of their argument that this tax constitutes double taxation, appellants’ counsel cite and rely upon the rulings in Merchants’ Mutual Insurance Co. v. Blandin, State Tax Collector, 24 La. Ann. 112; Williams v. Garignes, Tax Collector, 30 La. Ann. 1094; Walker v. City of New Orleans, 31 La. Ann. S2S; State v. Blaser, 36 La. Ann. 363; City of Shreveport v. Stringfellow, 137 La. 552, 68 So. 951; Ficklen v. City of New Orleans, 147 La. 567, 85 So. 330; and State v. Liberty Oil Co., 154 La. 267, 97 So. 438. None of these decisions is appropriate to the question to be decided here. In the Merchants’ Mutual Insurance Company’s Case, the ruling was merely that the company was liable for only one license tax notwithstanding the company had established more than one office or place of business. In Williams v. Garignes, Tax Collector, the court merely construed the statute requiring a license tax “from each keeper of a livery stable or yard, or livery and sale stable, with stalls for horses or mules, twenty-five dollars; for every public hack twenty-five dollars,’.’ as meaning that either a livery stable keeper or a public hack driver was liable for the $25' license tax, but that neither was liable for two such license taxes. In Walker v. City of New Orleans, the ruling was that an ordinance was invalid which required the owners or drivers of vehicles kept for hire to attach to each vehicle a pair of license plates furnished by the city and to pay an exorbitant tax as the price of each pair of plates. The city attorney, admitting that the ordinance was not valid as an exercise of the taxing power for raising revenue, contended that the tax was valid as a police regulation. The only question therefore was whether the imposition of the tax was a legitimate exercise of the police power; and the court held that 'it was not. In State v. Blaser, also, the only question was whether the municipal tax levy complained of was a legitimate exercise of the police power; and the ruling was that it was not. The ordinance undertook to exact from gardeners a payment of 25 cents for every load of vegetables brought to and sold at any public market. The city attorney, conceding that the ordinance was not a legitimate exercise of the taxing power for raising revenue, and that the ordinance was not intended as such, contended that it was merely a police regulation, which this court held it was not. In City of Shreveport v. Stringfellow, the ruling was merely that the constitutional amendment, in accordance with Act 260 of 1914, providing for the registry of motor yehieles and imposing a license tax therefor, for the construction and maintenance of the public roads and bridges, did not authorize municipalities to levy this extraordinary license tax. The argument for the municipality was that, inasmuch as article 229 of the Constitution of 1913 declared “no political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes,” any political corporation could impose any license tax imposed by the Legislature for state purposes; but this court held that the implied permission given to municipal corporations by article 229 of the Constitution had reference only to license taxes on trades, vocations, professions or callings. There was no question of double taxation in the case. In Ficklen v. City of
 
 *971
 
 New Orleans the ruling was merely an affirmance of two prior decisions maintaining that the Legislature had not levied a tax on the ownership of capital stock in foreign corporations other than banking companies or associations. In State v. Liberty Oil Co. the ruling was that the Act 81 of 1921, undertaking to levy a license tax for the sale of gasoline, was unconstitutional because the tax •was not levied in the method directed by the twenty-second section of article 6 of the Constitution, requiring the Legislature to levy a tax not exceeding two cents per gallon on gasoline. The statute was not adjudged invalid because of double taxation. On that subject the court said:
 

 “Learned counsel for the state argues that since there is no prohibition in the Constitution of 1921 against the imposition of double taxation whether in the form of a license, or a tax, upon vendors of gasoline, the Legislature was well within its power in adopting the statute.
 

 “Whatever might be the force of the argument in a proper case, it can have no application to the issues presented here, for, admittedly, the law was enacted in an attempt to comply with the mandatory provisions of the Constitution requiring the levying of a tax, not to exceed two cents per gallon, on gasoline sold in the state. * * * The constitutional mandate operates as a restriction upon the legislative power to impose any other tax, and in any other manner, than 'is therein provided.”
 

 Our conclusion is that the contention that the tobacco tax is invalid because it makes double taxation is not well founded.
 

 Appellants’ fifth ground of attack is that their payment of the license tax in the beginning of the year 1926, for the privilege of conducting their business as retail dealers until the end of the year, and the granting of a license by the state to them to continue their business until the end of the year, constituted a contract between the state and them, and that the Act 197 of 1926, undertaking to levy an additional license tax for the privilege of selling tobacco and tobacco products at retail, is an undertaking to impair the obligation of that, contract, and is therefore violative of the fifteenth section of article 4 of the Constitution of Louisiana and of the tenth section of article 1 of the Constitution of the United States, forbidding the enactment of any law impairing the obligation. of a contract. As that complaint refers only to the taxes that were to be collected in the year 1926 and not to the taxes to be collected thereafter, and as the year has now virtually expired and will have expired before this decision can be handed down, the question is only a moot question. The suit was not filed until the 29th of September, 1926; it was tried on the 8th of October, and a delay of 10 days was allowed for filing briefs; the case was decided by the district court
 
 on the 8th
 
 of
 
 November; the
 
 transcript of appeal was filed in the Supreme Court one week later, and the case was given a special preference on the docket and was heard on Monday, the 30th of November. It was then impossible for the members of the court, then in session, to read the record and briefs and decisions cited, give the case the consideration which it deserved, and render a decree before the next regular decision day, the 3d of January, 1927 — the first dies juridicus in the year. Even now the delay allowed by law for an application for a rehearing will not allow the decree in this case to become final for at least two weeks. By that time the proceeds of the tobacco stamps sold in December, 1926, will have been paid into the state treasury and credited to the school fund. No attempt was made on the part of the plaintiffs to hurry the case through the courts in better time than was actually made, and no complaint is made as to that. If we' should declare the statute invalid for any reason; we could not order a return of the taxes paid in 1926, and, of course, no such relief is asked. The plaintiffs, as retail tobacco dealers, have suffered no loss except tlie time expended in procuring and applying
 
 *973
 
 the stamps. The addicted or habituated ones who have paid the tax on the tobacco they-consumed in the last three months of 1926 may console themselves with the thought that every one’s mite was contributed to the reward of the men and women who have consecrated their time and talents to the task of handing down to the coming generation the stored up wisdom of the past. That comforting thought — in this pardonable instance of the law’s delay — might in a measure suppress the comparing of this sometimes necessary evil with such an abominable thing as the oppressor’s wrong, the proud man’s contumely, the insolence of office, or, perhaps worst of all, the pangs of a despised love. Be all of which as it may, we are not called upon now to determine whether this luxury tax was valid or invalid so far as it was paid by the indulgers in the luxury in the last three months of 1926.
 

 Appellants’ sixth point is that the statute is unconstitutional because it provides a new scheme of taxation, not provided for or contemplated or permitted by the Constitution, which, in its general scheme of taxation, in article 10 permits the Legislature to levy, first, the general ad valorem tax not exceeding 5% mills (section 3); second, an inheritance tax (section 7); third, license or occupation taxes (section 8); fourth, taxes on banks domiciled outside of the state and doing business in the state (section 9); fifth, taxes on rolling stock owned by nonresidents and operated in the state (section 16); sixth, severance taxes' on natural resources (section 21); and, seventh, license taxes on motor vehicles, and gasoline, kerosene and other explosives used for generating motive power (section 22 of article 6). That contention is merely a repetition, with some enlargement, of appellants’ third complaint. The contention was disposed of by our conclusion that the plenary power conferred upon the Legislature by the first and eighth section of article 10 of the Constitution included the authority to levy this tobacco tax.
 

 Appellants’ seventh point is that, notwithstanding the declaration in the statute that its provisions shall apply only to tobacco and tobacco products for retail sale in intrastate commerce, the statute does in fact impose the burden upon interstate commerce, in violation of the commerce clause in the eighth section of article 1 of the Constitution of the United States.
 

 In support of that contention one of the plaintiffs testified that, in their regular course of business, they received mail orders from customers in other states for cigars, cigarettes, and tobacco, and filled the orders by shipping the goods into the other states either by parcel post or by express. He estimated the amount of such sales as being a third of the plaintiffs’ total sales. After-wards he filed an affidavit saying that he had misunderstood the question which he had answered, and he then estimated the amount of the plaintiffs’ interstate sales as being only a twentieth — 5 per cent. — of the total sales. As Mr. Justice Harlan, on the Supreme Bench of the United States, once observed, the courts have the right to notice judicially that which everybody knows. One of the things which everybody knows is that retail dealers in cigars, cigarettes and tobacco make nearly all of their retail sales over the counter. It is therefore close akin to trifling with the important subject of the commerce clause in the federal Constitution for the plaintiffs to contend that the state is forbidden to impose this luxury tax upon local consumers by the only available or most effective method of apportionment, merely because some nonresident consumers may be so fastidious as to be unwilling to patronize their local retail dealers in tobacco, cigars or cigarettes. Such customers are at liberty to buy from mail order establishments in Louis
 
 *975
 
 iana, where the goods are not kept in a “retail place of business” for sale locally. Any retail dealer may accommodate such nonresident customers by shipping the goods withT out applying the tax stamp, provided the goods have not been, as said in the third section of the statute, “received into the retail place of business” and mingled, with the goods that are subject to the tax. The plaintiffs in this case have failed to show that the statute cannot be enforced against • their intrastate sales without impinging upon their right, which the statute recognizes, to make tax-free interstate sales.
 

 Appellants’ eighth point is that the making of the two appropriations — the' appropriation of the avails of the tax to the current school fund and the appropriation of $100,000 for the expense of enforcing or administering the law — in one statute, and particularly in a statute which has another and entirely different object, is violative of the last sentence in the ninth section of article 4 of the Constitution, which provides:
 

 “The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the government, pensions, the public debt and interest thereon, public schools, public roads, public charities and all state institutions; and such bill shall be so itemized as to show for what account each and every appropriation shall be made. All other appropriations shall be made by separate bills, each embracing but one object.”
 

 The dedication of the avails of the tax to the current school fund is not such an appropriation as is meant by the word appropriations in the ninth section.of article 4 of the Constitution. Board of Administrators v. Richhart, 139 La. 446, 71 So. 735. The appropriation of $50,000 for the fiscal year 1926-27 and $50,000 for the fiscal year 1927-28, to pay for the tax stamps, etc., is an appropriation ; but whether the appropriation should have been made by a separate bill, having no other object, is a matter which does not concern the plaintiffs in this suit. The question might have been raised by a refusal on the part of the paying authority to issue a voucher or to honor a warrant, or by an application for an injunction to forbid the officer to issue a voucher or honor a warrant in obedience of the appropriation. No such relief is asked in this suit, which is brought only against the supervisor of public accounts, and against whom the injunction is asked for merely to forbid his administering or enforcing the law, which is said to be unconstitutional. The tax stamps have been bought and distributed; and, because of the saving clause in the fifteenth section of the statute, it would not make the statute invalid in any other respect if we should adjudge the appropriation in the act invalid.
 

 Appellants’ ninth and tenth complaint may be considered as one; that is, that the statute violates the first and the tenth section of article 4 of the Constitution, in that it provides for drawing on the treasury without a specific appropriation, or for a specific purpose, and provides for an appropriation for a term exceeding two years, and for a contingent fund or purpose. The first section of article 4 of the Constitution forbids the drawing of money from the state treasury except in pursuance of a specific appropriation, or the making of an appropriation for a longer term than two years, and the tenth section requires every appropriation to be for a specific purpose and for a specific amount, and forbids any appropriation to be made under the head or title of .contingent or for a contingent fund. As we have said, the dedication of the avails of the tax for four years is not an appropriation in the meaning in which the word is used in article 4 of the Constitution. The appropriation of $50,000 for the year 1926-27 and of the same amount for the year 1927-28 means, first, an appropriation of $50,000, not for the two calendar years 1926 and 1927, but for the remainder of the one fiscal year, which commenced on the
 
 *977
 
 1st day of July, 1926, and ended on the 30th day of June, 1927; and, second, an appropriation of $50,000, not for the two calendar years 1927 and 1928, hut for the one fiscal year commencing on the 1st day of July, 1927, and ending on the 30th day of June, 1928. The term of the appropriation, therefore, does not exceed two years. The purpose of the appropriation is said to he “the cost of preparing [meaning perhaps procuring] and distributing the stamps required to be furnished and the inspection and auditing duties required herein.” Whether that is specific enough to comply with the requirement of the tenth section of article 4 of the Constitution is a matter which, as we have endeavored to explain, does not particularly concern the plaintiffs in this suit. Their allegation in that respect does not give them a right to the-writ of injunction prayed for.
 

 Appellants’ eleventh point is that the appropriation 'of the avails of the tax to the current school fund is a violation of the fourteenth section of article 12 of the Constitution, which specifies and enumerates — and, appellants contend, thereby limits — the sources of revenue which the Legislature may appropriate to the public school fund. At the end of the enumeration of four specific sources of revenue, in the fourteenth section of article 12 of the Constitution, is added the fifth and all-embracing^souree, viz.: “Fifth. Such other funds as the Legislature may appropriate.” There is therefore no .basis for the argument that the Legislature had no authority to allocate or appropriate the avails of this tax to the public school fund.
 

 Appellants’ twelfth point is that the statute levying this tax is violative of the sixteenth section of article 3 of the Constitution, requiring that each statute shall have only one object, in that the act has the three objects (1) to levy the tax, (2) to appropriate the avails of the tax to the public school fund, and (3) to appropriate $50,000 for each of the fiscal years 1926-27 and 1927-28 tp enforce the payment of the tax; and that the title of the act is not indicative of its object, as required also by the same'section and article of the Constitution, in that (1) the title indicates that the object is to levy the tax on the retail dealers in tobacco and its products, whereas the act itself levies the tax on the tobacco itself and its products; (2) the act attempts to levy the tax also on tobacco substitutes, which object is not indicated in the title; (3) the act appropriates $50,000 for each of the years 1926-27 and 1927-28, which object is not mentioned in the title; and (4) the title indicates that the rate of the tax may be based either on the weight or on the retail selling price, whereas the act itself bases the rate of the tax only on the retail selling price.
 

 The statute has only one principal object; that is, to levy and collect the tax for the benefit of the public schools; and that object is indicated plainly enough in the title of the act. The dedication of the avails to the public schools and the appropriation of the funds necessary to put the law into execution are details which were not required to be mentioned in the title of the act. We have decided already that the statute levies the tax, not as a property tax on the tobacco itself, but as a license tax on the retail sales' of it, as indicated in the title of the act. Whether the statute is invalid in so far as it undertakes to levy the tax on retail sales of tobacco substitutes, which are not mentioned in the title of the act, is a matter of no concern to the plaintiffs, because they do not aver or pretend that they deal in tobacco substitutes. To that extent the tax might be invalid without invalidating the tax on retail sales of tobacco and tobacco products. The statement in the title of the act that the tax might be based upon the weight instead of the retail price is surplusage, but not at all misleading. Although the title of the act
 
 *979
 
 is not as accurate as it might have been written, to indicate briefly the object of the act, it is not seriously or materially defective.
 

 Appellants’ thirteenth and fourteenth contentions are treated as one subject in their brief. The contentions are, first, that, inasmuch as the act makes no provision for indemnifying a retail dealer for stamps that may be lost, damaged or destroyed, or wasted upon a package sold in interstate commerce, or be left on hand when the law will have terminated, the statute deprives appellants of their liberty and property without due process of law, takes and damages their property without just or adequate compensation being paid therefor and deprives them of the equal protection of the laws, all in violation of the second section of article 1 of the Constitution of Louisiana, and the first section of the Fourteenth Amendment of the Constitution of the United States; and, second, that the act is too vague and indefinite in its terms to be capable of enforcement or execution, in that the retail selling price, on which the tax is based, is not sufficiently defined and is not fixed or determinable because it might change from time to time.
 

 It is true that the statute makes no provision for indemnifying a retail dealer whose stamps may be lost, destroyed or stolen, or left over when they will be no longer required, or pasted and wasted on a package afterwards shipped to a customer in another state; but those aré risks which the retail dealer must protect himself against, the same as he must guard against the loss, destruction or theft of his bread tickets, currency, and the like. It might as well be argued that a license or occupation tax is a taking of property without just or adequate compensation, or without due process of law, or without affording the equal’ protection of the laws, because the licensee’s place of business might be destroyed by fire, or he might become bankrupt or die before the term of the license has expired. It will be time enough for the Legislature to consider that proposition when and if the plaintiffs are ever deprived of the price of any tax stamps without an opportunity to use them.
 

 We find no merit in appellants’ final argument, that the statute is too vague and indefinite to admit of enforcement or execution because of its imperfect definition of “the retail or selling price,” or because the retail or selling price of an article is not fixed but may fluctuate. That slight flexibility in the apportionment of the tax is unavoidable,- and is not worse than the instability of the value of other property, subject to an ad valorem tax, and assessed for taxation for the whole year at such time as the assessor may list it. We do not apprehend that the retail dealers will find much difficulty in obeying the law in that respect if, in good faith, they stamp each package of tobacco or tobacco products according to the price at which they intend to sell the package or its contents at retail. The supervisor of public accounts or his agents will look after that.
 

 The judgment is affirmed;