McCALEB, Justice.
This suit is brought by authority of Act 330 of 1938 for a refund of $100 which appellant paid under protest to the Collector of Revenue as an occupational tax under Section 20(d) of Act IS of the Third Extra Session of 1934, as amended by Act 6 of 1948, for engaging in the business of operating gambling slot machines. The basis for the claim, according to the petition, is that the statute is invalid being in violation of Section 8 of Article 19 of the Constitution of 1921 and, alternatively, that it also fails to conform to Section- 17 of Article 3. These challenges were resolved against appellant in the district court and he has brought the case here for review.
Appellant has not pressed, in this court, his alternative contention that Act 6 of 1948 is violative of Section 17 of Article 3[1] of the Constitution and, therefore, the claim is to be treated as abandoned. However, he has raised another point, which was not pleaded by him below, that the Act violates Section 16 of Article 3 of the Constitution which prescribes that all laws shall embrace but one object which shall be indicated in the' title.
This belated contention will not be considered. It is well settled that, where the constitutionality of a law is assailed on certain grounds in the trial court, this court will not entertain other grounds of alleged invalidity raised here for the first time. Allopathic State Board Medical Examiners v. Fowler, 50 La.Ann. 1358, 24 So. 809; State v. Banner Cleaners & Dyers, 170 La. 76, 127 So. 370 and Causey v. Opelousas—St. Landry Securities Co., 192 La. 677, 188 So. 739.
■ Hence, the only question presented for determination is appellant’s main contention *989 that Section 20(d) of Act 15 of the Third Extra Session of 1934, as amended by Act 6 of 1948 is inimical to Section 8 of Article 19 of the Constitution, which declares:
“Gambling is a vice and the Legislature shall pass laws to suppress it.”
The theory upon which plaintiff assails the statute is that, by the exaction of a tax on the business of operating slot machines, it actually licenses and legalizes such operation in direct disobedience of the constitutional mandate that the Legislature shall suppress gambling.
The Collector, on the other hand, while conceding that, if the statute legalized gambling, it would be violative of the Constitution, see State v. Barbee, 187 La. 529, 175 So. 50, strenuously maintains that by no stretch of interpretation can it be evinced that such a purpose was either intended or accomplished.
The controverted section of the statute declares:
“Every person, association of persons, firm or corporation engaged in the business of operating, or who permits to be operated in his place of business, any so called “Slot” machine or similar machine or device which is operated by means of inserting or depositing a coin, token slug, or similar object, or several of such, and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine or device to receive cash, premium, merchandise, or tokens, shall pay a license of One Hundred Dollars ($100.00) for each such machine or device; provided that only one-half of the tax levied in this subsection shall be payable for the remainder of the calendar year 1948 and shall be paid to the Collector not later than August 15, 1948. Payment of the license tax imposed by this subsection shall not be held to legalize the operation of any machine or device defined herein which is prohibited by law. This subsection shall not be held to repeal any provisions of any law prohibiting the operation, possession or use of any such machine or device.”
The district judge was of the opinion that, since subsection 20(d) specifically provides that the payment of the tax imposed “shall not be held to legalize the operation of any machine or device defined herein which is prohibited by law”, it was manifest that the constitutional mandate for the suppression of gambling was not violated by the Legislature.
 The ruling is correct. The statute, considered in any of its aspects, cannot be regarded either as legalizing or otherwise fostering gambling.
Counsel for plaintiff, nonetheless, insist that the use of the word “license” in the statute can only connote the grant of a privilege or right to engage in the business subject to the license tax and that, perforce, the conclusion is inescapable that the operation of gambling slot machines has been authorized.
*991 This argument is unsound for a number of reasons. In the first place, it must, of necessity, disregard the plainly expressed intention of the Legislature that payment of the tax does not authorize or legalize the business made subject thereto. Moreover, it completely overlooks the difference between licenses or privileges to engage in certain businesses or pursuits which are subject to regulation under the police power, and a license or excise tax levied solely for revenue under the taxing power of the government.
 That the sovereign may tax that which it prohibits is not open to serious question. This doctrine may seem paradoxical to some but any doubts as to its soundness stem from a misconception of the nature of a tax.- “Taxes are not favors; they are burdens * * * Youngblood v. Sexton, 32 Mich. 406, 20 Am.Rep. 654. Taxes levied on business for revenue do not have for their purpose the licensing of the business; they are laid as excises upon the doing of the business, whether lawfully or unlawfully conducted. Cooley, The Law of Taxation, 4th Ed., Vol. 1, Sections 26 and 27 and authorities there cited; 53 Corpus Juris Secundum, Verbo Licenses, § 28 page 557; License Tax Cases, 5 Wall. 462, 18 L.Ed. 497; United States v. Jin Fuey Moy, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061; United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493; United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043; United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025; United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233; Wainer v. United States, 299 U.S. 92, 57 S.Ct. 79, 81 L.Ed. 58; Stein v. Kentucky State Tax Commission, 266 Ky. 469, 99 S.W.2d 443; State ex rel. Melton v. Rombach, 112 Miss. 737, 73 So. 731 and Casmus v. Lee, 236 Ala. 396, 183 So. 185, 118 A.L.R. 822, also annotation in connection with this case at page 827 and authorities there cited.
The Supreme Court of the United States has been called upon on numerous occasions, particularly in connection with National Prohibition, to answer divers arguments respecting the right of government to levy a tax upon an unlawful business. And, without exception, these exactions have been upheld. Thus, in United States v. Yuginovich, supra, it was declared:
“That Congress may under the broad authority of the taxing power tax intoxicating liquors notwithstanding their production is prohibited and punished we have no question”. [256 U.S. 450, 41 S.Ct. 553.]
In United States v. One Ford Coupe Automobile, supra, it was said:
“A law which imposes a tax on intoxicating liquor, whether legally or illegally made, is not in conflict with another law which prohibits the making of any such, liquor * * *.” [272 U.S. 321, 47 S.Ct.' 156.] ■ ;
*993 In United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020, Justice Holmes observed:
"We see no reason to doubt the interpretation of the Act, or any reason why the fact that a business is unlawful should exempt it from paying the taxes that if lawful it would have to pay.”
In United States v. Constantine, supra, it was declared:
“The burden of the tax may be imposed alike on the just and the unjust. It would be strange if one carrying on a business the subject of an excise should be able to excuse himself from payment by the plea that in carrying on the business he was violating the law.. The rule has always been otherwise.” [296 U.S. 287, 56 S.Ct. 226.]
And, in Wainer v. United States, supra, it was stated:
“Petitioners insist it is a contradiction in terms to say the laws of the United States at the same time prohibit and license an occupation. The contention is based on misconception of the nature of the exaction. The United States has not licensed the liquor business but, as clearly within its power, has laid an excise upon the doing of the business whether lawfully or unlawfully conducted.” [299 U.S. 92, 57 S.Ct. 80.]
By Section 8 of Article 10 of the Constitution of this State, the Legislature was given broad powers in levying excise or license taxes upon all persons pursuing any trade, business, occupation, vocation or profession not specifically excepted therein. These powers are not in anywise limited to the taxation of lawful pursuits but apply to all businesses, legal and illegal alike.
In proclaiming that the levy of a license carries with it authority to pursue the taxed occupation, counsel for appellant fail to comprehend the difference between a license, which confers a privilege to engage in a particular business, and an excise fax levied for the purpose of securing revenue. The fact that the excise is denominated a license is of no importance in determining the true nature of the tax. Indeed, the words “license” and “excise” have been interchangably used by legislatures and courts in describing a tax without particular significance as to its nature. See Lionel’s Cigar Store v. McFarland, 162 La. 956, 111 So. 341 and Louisiana State Dept, of Agricul. v. Sibille, 207 La. 877, 22 So.2d 202. In final analysis, they are excises as. distinguished from property taxes.
Accordingly, employment in a statute of the word “license” in describing a levy does not of' itself indicate that a privilege or special right has been conferred under the police power of the sovereign in contradistinction to an excise levied under the taxing power. When a business has been subjected to police regulation, a license or certificate must be obtained before it may be pursued. For example, auctioneers are required, by Act 163 of 1910, to obtain a license from the State Auditor; persons dealing in securities must be li *995 censed by the Louisiana Securities Commission and pay a license fee therefor in conformity with Act 177 of 1920; real estate brokers must be licensed by the Louisiana Real Estate Board and pay a license fee under Act 236 of 1920, as amended, and attorneys-at-law are required to be admitted to the bar by this court before they are able to engage in the practice of-their profession.
The foregoing are illustrative of certain privileges which are regulated under either the police power or the judicial power of the state. Yet, those who secure these privileges must also pay an occupational license tax levied under Act 15 of the Third Extra Session of 1934. But the mere payment of such excise by those whose business is subject to regulation does not confer upon them the privilege to engage in their calling.
The foregoing distinction between a privilege or license to do business conferred under the police power of the sovereign .and a license or excise tax levied for revenue has been consistently recognized and .applied by the vast majority of State courts. The landmark case of the many pronouncements on the subject is Youngblood v. Sexton, supra, which was written in 1875 by the eminent authority on taxation and constitutional law, Judge Cooley of the Supreme' Court of Michigan. That was an action to restrain the collection of a tax assessed against certain individuals engaged in the liquor traffic on the ground that it was equivalent to a license of the traffic in contravention of provisions of the Michigan Constitution. In the opinion rejecting this contention, the following pertinent observations are made:
“Taxes upon business are usually collected in the form of license fees; and this may possibly have led to the idea that seems to have prevailed in some quarters, that a ta'x implied a license. But there is no necessary connection whatever between them. A business may be licensed and yet not taxed, or it may be taxed and yet not licensed. And so far is the tax from being necessarily a license, that provision is freqently made by law for the taxation of a business that is carried on under a license existing independent of the tax.
‡ % ‡ * * ‡
“ * * * If protection because of the tax was due to the very thing upon which the tax was imposed, there would be an inconsistency in taxing a prohibited trade; but treating taxation, however and wherever it may fall, as the return for the general benefits of government, — for the protection of life, liberty and the social and family relations, as well as to business and property, — which is the only' legal and proper idea of taxation, there is no inconsistency whatever in making a thing which is not protected one of the measures or standards by which to determine how much the party owning or supporting it ought to pay the government. If one puts the .government to special inconvenience and cost *997 by keeping up a prohibited traffic or maintaining a nuisance, the fact is a reason for discriminating in taxation against him; and if the tax is imposed on the thing which is prohibited, or which constitutes the nuisance, the tax law, instead of being inconsistent with the law declaring the illegality, is in entire harmony with its general purpose and may sometimes be even more effectual.”
The judgment appealed from is affirmed.
LE BLANC, Justice (concurring).
Regardless of the nature of the levy-imposed by the statute that is attacked as being in contravention of Section 8 of Article XIX of the Constitution which declares that gambling is a vice and ordains the Legislature to suppress it, I wonder if, by its action in enacting that law in which the levy is limited to $100 on each slot machine, the effect was not to encourage gambling rather than suppress it.
However, in view of the almost unanimous authority throughout the country to the effect that a tax may legally and validly be imposed, on a business or something which the law itself denounces as illegal and unlawful I yield my personal views on the subject- and therefore concur in the decision herein rendered.

. It provides: “No law shall be revived or amended by reference to its title, but in such cases the act revived, or section as amended, shall be reenacted and published at length.”