McCALEB, Justice
(dissenting).
I am in accord with the conclusion of the district judge and that of the Court of Appeal for the Parish of Orleans in Cosse v. City of New Orleans, 99 So.2d S08, wherein the identical question here involved was presented for determination. The views I entertain probably stem from a different process of reasoning but the result reached is the same, i. e., that the amendment of 1940 to Section 24.1 of Article 14 of the Constitution, denying to municipalities and other political subdivisions the power to levy excise, license or privilege taxes upon gasoline, etc., was never intended to curtail or restrict the power of these political subdivisions, specially granted by Section 8 of Article 10 of the Constitution, to levy occupational license taxes upon retail dealers in gasoline and other motor fuels.
The pertinent language of the amendment is that “No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, * * * ”, If this provision is applied as written without the aid of judicial interpretation, there could be hardly any doubt that it would not govern this case since the tax levied by the City of Baton Rouge is an occupational license on plaintiff as a retail dealer, the amount of which is based on his gross sales, including sales of gasoline and, therefore, is not in any sense a tax on the gasoline itself. However, in view of the use of the words “ex *546 cise, license or privilege” in describing the kind of tax which may not be levied on gasoline or other motor fuel by a municipality or political subdivision, the amendment indicates that the prohibition was not intended to be levelled against the assessment of a direct or ad valorem tax on gasoline or motor fuel itself, as literally stated, but, rather, as the majority opinion so aptly points out, a prohibition against the assessment of an indirect tax or excise on the privilege of selling, using, consuming, etc., of gasoline or motor fuel. To thus conclude requires construction; the law cannot be enforced according to its letter.
Accordingly, it follows that, due to the inaccuracy of the language used in Section 24.1 of Article 14, the provision cannot be regarded as free from ambiguity and must be construed and interpreted in order to ascertain its true meaning. When this is done, it becomes manifest that the provision was never intended as a restriction upon the right of political subdivisions to impose occupational license taxes on retailers of gasoline based on their gross sales of the fuel.
It is provided by Article 18 of our Civil Code that:
“The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.”
This Court has employed this article on numerous occasions in its interpretation of legislative acts and constitutional provisions. In one of the comparatively recent cases, State v. Alden Mills, 202 La. 416, 12 So.2d 204, the Court, relying on Article 18 as the basis for its decision, construed, as retrospective in its operation, an amendment to Section 19 of Article 19 of the Constitution providing that all taxes and licenses prescribe in three years from their due date.
Application of this principle of construction to the case at bar leaves no doubt whatever that the purpose of Section 24.1 of Article 14 of the Constitution, as last amended by Act 395 of 1940, was to withdraw from the City of New Orleans and other political subdivisions the right which the City and the parishes had previously enjoyed of levying an excise tax, similar to that of the State, on gasoline and other motor fuels sold by dealers to the consumer.
The history of Section 24.1 of Article 14 makes this self evident. The original legislation, authorizing the levy of a motor fuel tax by any municipality was Act 180 of 1924. This law, which was adopted on November 4, 1924 as an amendment to Section 24 of Article 14 of the Constitution, *548 created a special paving fund for the City of New Orleans dedicated to the city’s proportion of the cost of pavement of streets and roadways and authorized the levy of a one cent per gallon tax on all gasoline or other motor fuel sold in the city for the maintenance of said fund. Thereafter, by Act 15 of the Extra Session of 1928 (which was amended by Act 72 of 1934; Act 21 of the First Extra Session of 1934 and Act 32 of the Second Extra Session of 1934) and Act 31 of the Second Extra Session of 1934, the police juries of each parish, as well as the City of New Orleans, were empowered to levy a one cent motor fuel tax.
In 1936, by Act 87 thereof, Act 15 of the Extra Session of 1928 and Act 31 of the Second Extra Session of 1934 were repealed and thus the power delegated to the parishes and the City of New Orleans to levy motor fuel excise taxes was withdrawn and a motor fuel tax to be levied by the State was substituted therefor. Notwithstanding this, the City of New Orleans was successful in having a constitutional amendment (proposed by Act 341 of 1936) adopted on November 3, 1936, as a supplement to Section 24 of Article 14 of the Constitution, authorizing it to levy a tax of two cents per gallon on all gasoline or motor fuels sold, used or consumed in the City.
It is indisputable that it was because of the existence of this constitutional amendment that the Legislature found it necessary in 1940 to submit a proposal (Act 395 of 1940) to again amend Section 24.1 of Article 14 by substituting therefor the present provision that no excise, license or privilege tax may be levied by any municipality or public subdivision on gasoline or other motor fuel. This was carried out conform-ably with the legislative policy, signified for the first time by Act 87 of 1936, of having all excise taxes on motor fuels levied and collected by the State itself to the exclusion of its municipalities and political subdivisions.
Since it appears that the sole and only purpose for the adoption of the constitutional provision now relied on by plaintiff was to withdraw frpm municipalities and other subdivisions the right to levy taxes on the sale, use and consumption of motor fuel, it is equally evident that the 1940 amendment did not and was never intended to affect the power delegated to these bodies to collect the occupational license taxes from retail dealers in gasoline, based on the computation of their gross sales.
Finally, plaintiff’s counsel lay stress on the circumstance that the constitutional prohibition is against the levying of a “license” as well as an excise tax and from this it is argued that the amendment necessarily includes a prohibition against the levying of an occupational license tax based on the gross sales of gasoline.
The majority opinion gives efficacy to this proposition but I find little merit in it. *550 The word “license”, when used in connection with “excise” or “privilege” taxes in-legislation of this sort is generally employed interchangeably in describing an indirect tax without particular significance as to its nature. See Lionel’s Cigar Store v. McFarland, 162 La. 956, 111 So. 341; Louisiana State Dept. of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202 and Giamalva v. Cooper, 217 La. 979, 47 So.2d 790, 793.
In the last cited case, contention was made that, since the statute imposed an occupational license tax on the slot machine business, the tax was illegal because it conferred a privilege on the taxpayer to engage in the gambling business in violation of the Constitution. But we rejected this argument, stataing that “The fact that the excise is denominated a license is of no importance in determining the true nature of the tax. * * * In final analysis, they are excises as distinguished from property taxes.” So, in this case, the use of the word “license” affords no good ground for attributing a legislative intent to prohibit the levy of an occupational license tax on retail dealers of gasoline computed on their gross sales.
I respectfully dissent.