HAWTIJORNE, Justice.
 

 The curatrix of Reuben J. Parks, a veteran of World War I, applied to the district court for an order to sell, in her capacity as such curatrix, certain property belonging to the veteran and to purchase with the proceeds thereof, in the veteran’s name, certain other real estate as a home for her ward. The district court refused to grant the order, and the curatrix appealed to this court.
 

 Mrs. Hazel Reilly Parks, having qualified as curatrix of her husband, Reuben J. Parks, a veteran of World War I, under the provisions of Act 71 of 1932 (the Uniform Veterans’ Guardianship Act), which act was amended by Act 201 of 1934 and amended and reenacted by Act 256 of 1944, filed a petition in the Civil District Court, Parish of Orleans, Division “A”, alleging that as such curatrix, availing herself of the provisions of Section 20 of Act 71 of 1932, as amended by Act 201 of 1934, she did purchase for her ward, Reuben J. Parks, in his name and with his funds, a home located in Ingleside Heights, Parish of Jefferson, bearing Nos. 333-333% Aris Street, said purchase being made from Milton J. Reilly before Plauche F. Villere, notary, on October 5, 1938, registered in Conveyance Book 145, Folio 362. She further alleged that the property acquired was no longer suitable to the convenience and needs of the veteran and his family, and that it was to his interest that this property, purchased with the veteran’s funds, be sold and the proceeds thereof reinvested in certain other real estate situated in the Parish of Orleans, having a front of 20 feet on D’Hemecourt Street by a depth of approximately 160 feet, more fully described in the petition and order attached thereto. She further alleged that she had entered into an agreement of sale with Tony Louis Corpora to sell to him the property located at 333-333% Aris Street for the sum of $4,000, and, further, that she had, in her capacity as curatrix of the
 
 *68
 
 veteran, Reuben J. Parks, entered into a contract to purchase the property on D’Hemecourt Street for the sum of $3,900; that the property located on D’Hemecourt Street was much more convenient for the use of the veteran, herself, and her minor son by a former marriage, and that it was much nearer to the homes of her father and brothers.
 

 She further alleged that in her capacity as curatrix she had received a letter dated August 18, 1944, from the Veterans’ Administration, approving the sale and purchase of the properties. Under date of August 30, 1944, the Veterans’ Administration accepted service and waived citation and all legal delays of the curatrix’ petition, and on the same date approved her proposals therein by endorsing the petition as filed “approved”.
 

 The district judge heard testimony under the curatrix’ petition, which disclosed that there was animosity between her husband and the neighbors who resided near 333-333% Aris Street, that the neighbors treated her husband with contempt, and that living conditions at such place had become unbearable to the veteran and his family, and that it was to his best interest to acquire a home in the neighborhood of petitioner’s friends and relatives. The testimony further disclosed that the veteran, although able to take care of his person, was a subject of interdiction though not interdicted, and that, although he could write his name, he would not realize what he was doing, due to his mental condition, if he signed the act of sale.
 

 The district judge, after hearing the testimony, was of the opinion that, in order to transfer valid and legal title to the property standing in the name of an individual who is admittedly insane, it would be necessary to have such individual interdicted and a curator appointed as provided by the Revised Civil Code, and found that the veteran, Reuben J. Parks, had never been interdicted and such curator had never been appointed; or, in other words, that in this case the curatrix appointed under the Uniform Veterans’ Guardianship Act did not have authority under that act to sell the property. For these reasons he declined and refused to sign the order authorizing the sale of the property standing in the name of the veteran and the acquisition in his name of other property as a home with the funds realized from the sale.
 

 The curatrix in this case qualified under the provisions of Act
 
 71
 
 of 1932, which act was amended and reenacted by the provisions of Act 256 of 1944, and, since the latter act provides that all existing tutor-ships and curatorships administering benefits as defined therein shall continue in full force and effect, the provisions of the latter act are applicable to the question involved in this case.
 

 Act 256 of 1944 is a special law dealing with veterans and beneficiaries . of the
 
 *70
 
 Veterans’ Administration, and concerns, among other things, the curatorship of incompetent veterans, but provides that there shall be no pronouncement of interdiction of an incompetent veteran.
 

 The statute is concerned only with property of incompetent veterans and other incompetent and minor beneficiaries of the Veterans’ Administration when said property consists of money received from the United States government through the Veterans’ Administration and the revenues or profits from any property wholly or partially acquired or to be acquired therewith, and, before use may be made of the statute, the court must be apprised that it is dealing with an incompetent veteran or other incompetent or minor beneficiary of the Veterans’ Administration and with funds due and to be received from the government or with an estate acquired partially or wholly with such funds, and also with the revenue or profit from any property wholly or partially acquired therewith.
 

 We have carefully analyzed and studied the law with reference to interdiction found in the Revised Civil Code and to the private sale of property belonging to such interdict, Act 209 of 1932, which is the general law on the subject, and also Act 256 of 1944, the Uniform Veterans’ Guardianship Act, a special law. Our analysis conclusively shows that it was the intent and purpose of the Legislature of this state to provide by this special law a practical, speedy, and economical procedure for the appointment of curators and the administering of the estates of incompetent veterans and their dependents when such estates consist entirely of money received or to be received from the government of the United States through the Veterans’ Administration, of assets acquired therewith, or of revenues or profits from any property wholly or partially acquired therewith. Furthermore, the procedure as set up in the act was wisely adopted by the Legislature of our state for the purpose of jealously guarding and carefully protecting the estate acquired under the act by an incompetent veteran.
 

 Section 15 of this act reads as follows: “Purchase of. Property for Home. Any curator or tutor appointed under this Act may purchase for his ward a home with the funds of the ward whenever said purchase meets with the approval of the interested parties, the Court of appointment, and the Veterans Administration, provided that sufficient time be given the Veterans Administration to investigate the property to be purchased.”
 

 The Legislature in incorporating the above quoted section into the act had only one intent and purpose, and that was to provide a home for a veteran for whom a curator had been appointed under the provisions of the act whenever the purchase of such home is made with the approval of the interested parties, the court of appointment, and the Veterans’ Administration.
 

 
 *72
 
 Section 21 provides: “Intent of Act. This Act shall be liberally construed to secure the beneficial interests and purposes thereof and shall apply only to beneficiaries of ihe Veterans Administration.”
 

 It is true that this special act does not expressly grant to a curator authority to sell a home acquired under its provisions. However, to hold that a curator appointed under the act may purchase for his ward a home with the funds of the ward, but that after such purchase would not be permitted to sell the home when it became unsuitable and use the revenue derived therefrom in acquiring a suitable home for the incompetent veteran without first complying with the general laws with reference to interdiction and such sale, would, in effect, defeat the intent and purpose of the Legislature in adopting the act. Moreover, such construction would be contrary to its plain terms which provide that it shall be liberally construed to secure the beneficial interests and purposes thereof.
 

 It is obviously to the best interest of the incompetent veteran in this case to permit the sale and acquisition of the properties here involved as prayed for in the curatrix’ petition.
 

 It is made the mandatory duty of the curator to invest any funds of the estate of the ward amounting to $100 or more in excess of $300 in certain bonds and securities named and designated therein, and such curator may use any lesser amount remaining in his hands for the maintenance and support of the ward, his spouse, his minor children, and his dependent parents.
 

 The act in none of its provisions specifically provides for the liquidation or sale of such bonds or securities, and we do not think it can be said that, in the event the ward is confronted with the necessity of some unusual expenditure to preserve his health or physical welfare, such as an emergency operation, the curator, with the approval and consent of the Veterans’ Administration and under orders of the court, is not authorized to, and cannot, liquidate or sell the securities or bonds so purchased with the ward’s funds for the purpose of paying these necessary expenses in the event the funds on hand are insufficient. We think it would be unreasonable to hold that the curator has no such right, for in our opinion such right is given within the meaning and spirit of the act. It follows that a curator has the same right with reference to the liquidation and sale of property acquired with the - ward’s funds and to the reinvestment by the purchase of a suitable home with the proceeds realized from such sale.
 

 We have construed the statute here involved to accomplish the purpose for which it was enacted, and, in our opinion, to give effect to the legislative will. Any other construction would defeat the clear
 
 *74
 
 purpose of the lawmakers, and in our construction we are supported by the law and authorities.
 

 “* * * Moreover, the object that the Legislature had in view should be ascertained, and the interpretation adopted which best harmonizes with the context and with that object.” Thibaut v. Board of Com’rs of Lafourche Basin Levee Dist., 153 La. 501, 96 So. 47, 48.
 

 “It is the duty of the court to ascertain the meaning of the Legislature and to attach to its acts a rational and beneficial meaning, if possible, rather than an irrational and injurious one.” State ex rel. Porterie, Atty. Gen. v. Louisiana Highway Commission, 179 La. 395, 154 So. 36, 38.
 

 “ * * * Courts will construe a statute so as to accomplish the purpose for which it was enacted and to give effect to the legislative will.” Pepsodent Co. v. Krauss Co. (International Cellucotton Producers Co. v. Krauss Co., Ltd.), 200 La. 959, 9 So. 2d 303, 305.
 

 “Since the intention of the legislature constitutes the law of its enactments, it is the intention rather than the literal meaning of the statute which controls; or, as is generally said, the spirit of the statute will prevail over the strict letter. Consequently, cases which do not come within the strict letter of the statute, if within the spirit, will fall within the scope of the statute, and cases within the letter of the statute, if without its spirit, will not come within its operation. But this principle is not applicable if the statute is clear and unambiguous, so that there ' is no doubt concerning the legislative intent.
 
 Numerous factors may, however, raise such a doubt. It may be raised where a literal meaning leads to absurdity, contradiction, or any other effect which is contrary to the legitimate objects of legislation. As a result, the court may consider the spirit and reason of a statute where a literal meaning
 
 * * *
 
 would defeat the clear purpose of the lava-makers."
 
 (Italics ours.) Crawford, The Construction of Statutes, Section 178, page 292.
 

 For the reasons assigned, the judgment of the district court refusing to sign the order as prayed for in plaintiff’s petition is set aside, and it is now ordered that the case be remanded to the district court, and that the Honorable Paul E. Chasez, judge of Division “A”, Civil District Court, Parish of Orleans, be, and he is hereby, directed to sign the order authorizing the sale and acquisition of the properties described in plaintiff’s petition, as therein prayed for; all costs of these proceedings to be paid from the estate of the ward.