108 So.2d 111 (1958)
236 La. 521
Wilfrid S. ROBERTS, d/b/a Robert's Esso Service Station, et al.
v.
CITY OF BATON ROUGE et al.
No. 43832.
Supreme Court of Louisiana.
May 26, 1958.
On Rehearing November 10, 1958.
Rehearing Denied December 15, 1958.
*112 Durrett, Hardin, Hunter, Dameron & Fritchie; Cadwallader & Perkins, Baton Rouge, for plaintiffs.
William L. Murdock, City Atty., Robert E. Eatman, Asst. City Atty., Shreveport, Frank H. Peterman, City Atty., Alexandria, Haynes Harkey, Jr., City Atty., Monroe, A. R. Le Compte, City Atty., De Ridder, Arthur C. Watson, City Atty., Natchitoches, Alvin J. Liska, City Atty., Ernest L. Salatich and Dominic C. Grieshaber, Asst. City Attys., New Orleans, amici curiae.
R. Gordon Kean, J., Parish Attorney, John V. Parker, Asst. Parish Atty., Baton Rouge, for defendants-appellees.
SIMON, Justice.
The Court of Appeal, 1st Circuit, has certified questions of law to us for instructions, and under Sec. 4 of Rule XIII of this Court, the Court of Appeal has certified its findings of fact on which the said questions of law are predicated. Rather than submit our instructions on the questions of law certified and remand the case to the Court of Appeal for decision, *113 we exercise the privilege accorded us by Sec. 25 of Art. VII of our Constitution, LSA, of considering and disposing of the whole matter in controversy as though it had been appealed directly to this Court[1].
We consider the findings of fact of the Court of Appeal pertinent to the issues here involved are as follows:
"This is a declaratory judgment action brought by certain service station operators against the City of Baton Rouge and its treasurer. Plaintiffs seek judgment interpreting Section 62, Title 9 of the Baton Rouge City Code[2], in the light of Section 24.1 of Article XIV of the Louisiana [LSA-] Constitution, and decreeing that plaintiffs are entitled to occupational licenses to operate service station without including in the computation of the occupational license taxes due by them to the City, their gross sales of gasoline, motor oils and other motor fuels.
"The city ordinance in question affecting the occupational license tax owed by all businesses within the corporate limits including plaintiffs, provides that:
"`The amount of the license tax levied herein in each case is hereby fixed, determined and ordained to be the same as that fixed, levied and collectible by the State of Louisiana under, and shall be graded in accordance with, the provisions of Louisiana [LSA-] Revised Statutes, Title 47, Sections 341-405, both inclusive, as amended, and all other applicable laws of Louisiana, all of which for the purposes of this ordinance are made a part hereof by reference as fully as if written herein in extenso.'
"The authority for the State and for local subdivisions to impose occupational license taxes is found in Section 8 of Article X of the Constitution of 1921, and which pertinently provides as follows:
"`License taxes may be levied on such classes or persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper * * * No political subdivision shall impose a greater license tax than is imposed for State purposes * * *'
"The State occupational license tax upon retail gasoline dealers such as plaintiffs provides that the gross sales by which it is measured shall include gasoline sales. LSA-R.S. 47:353.
"The City Treasurer of the City of Baton Rouge therefore requires plaintiffs-appellants to include in their gross sales (by which their city occupational license tax is measured) their sales of gasoline products, just as is done for the purpose of measuring the State occupational license tax due.
"Plaintiffs urge that the inclusion of their sales of gasoline products used in the generation of motive power violates the constitutional provisions found in Section 24.1 of Article XIV of the Constitution, which provides:
"`No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power; provided that nothing in this Constitution shall be construed to limit the right of the Legislature to levy State *114 taxes on gasoline, benzine, naphtha and other motor fuels.'"
The district court, in rendering judgment in favor of the defendant City held:
(1) that an occupational license tax measured by the gross sales of gasoline in the generation of motive power is not an "excise, license or privilege tax" on gasoline such as is prohibited by Sec. 24.1 of Art. XIV of the Louisiana Constitution, and
(2) in concluding that parish, municipal, and other local political subdivisions are not prohibited by said section and article from requiring the inclusion by service station operators of sales of gasoline products in the gross sales by which their local occupational license tax is measured.
On the basis of the conclusions reached by the district court and the factual findings submitted by the Court of Appeal, as aforesaid, the issue presented for our determination is whether an occupational license tax measured by the gross sales of gasoline used in the generation of motive power is an "excise, license or privilege tax" on gasoline such as is prohibited by Sec. 24.1 of Art. XIV of the Louisiana Constitution.
Art. X, Sec. 8 of the Louisiana Constitution delegates to the Legislature the power to provide for the levying of license taxes upon certain trades, businesses and occupations, the pertinent part of which reads as follows:
"License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper * * *"
Art. X, Sec. 8 of the Constitution was last amended by Act 77 of 1934, and adopted by the electorate on November 6, 1934, which will be hereinafter referred to. Subsequent to this last amendment of Article X, Sec. 8 of the Constitution, Article XIV, Sec. 24.1 of the Constitution was amended by Act 395 of 1940 and adopted by the electorate on November 5, 1940, to provide as follows:
"No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power; provided that nothing in this Constitution shall be construed to limit the right of the Legislature to levy State taxes on gasoline, benzine, naphtha and other motor fuels."
The Legislature has acted under the authority of Art. X, Sec. 8 of the Constitution to levy a State occupational license tax and to provide that municipalities may levy similar taxes, provided that the said taxes conform to the State Occupational License Tax Laws. Pursuant thereto, Legislature adopted LSA-R.S. 47:341 and LSA-R.S. 47:397.
LSA-R.S. 47:341 provides: "In addition to all other license and excise taxes imposed in other chapters of this Title or in other laws, there is hereby levied an annual license tax upon each person pursuing any trade, profession, vocation, calling or business in this state subject to license under Section 8 of Article X of the Constitution of 1921, which annual license tax shall be classified and graded as set out in the following Sections of this Chapter."
LSA-R.S. 47:397 provides: "Any municipal or parochial corporation shall have the right to impose a license tax on any business, occupation or profession herein enumerated, provided that all such license taxes shall conform to the provisions of Section 8 of Article X of the Constitution."
LSA-R.S. 47:353 provides for the calculations of the occupational license tax due by retail dealers on the basis of their dollar amount of gross annual sales.
*115 The City Council of the City of Baton Rouge imposed and levied the occupational license tax herein opposed upon "* * * each person who may be subject to such license tax under the Constitution and Laws of Louisiana, pursuing and conducting any business within the corporate limits of the City." The amount of the said occupational license tax is provided for as abovestated, and as follows:
"The amount of the license tax levied herein in each case is hereby fixed, determined and ordained to be the same as that fixed levied and collectible by the State of Louisiana under, and shall be graded in accordance with, the provisions of Louisiana [LSA-] Revised Statutes, Title 47, Sections 341-405, as amended, and all other applicable laws of Louisiana, all of which for the purposes of this ordinance are made a part hereof by reference as if written herein in extenso." (Sec. 62, Title 9, Baton Rouge City Code.)
Plaintiff contends that Sec. 24.1 of Art. XIV of the Constitution, as amended by Act 395 to 1940, prohibits any political subdivisions of the State from levying any tax on gasoline or other motor fuels which is either an excise tax, a license tax or a privilege tax; that once the amendment of 1940 became effective the Constitution of Louisiana authorizes the Legislature to permit the levying of license taxes by political subdivisions of the State, under authority of Art. X, Sec. 8, only if the license tax is not an excise, license or privilege tax on gasoline or other motor fuels, the levying of which is prohibited by Sec. 24.1 of Art. XIV; that therefore the attempt on the part of the City of Baton Rouge to collect an occupational license tax from these plaintiffs is unconstitutional insofar as it attempts to tax plaintiffs' gross receipts from sales of gasoline and other motor fuels.
On the other hand, the City of Baton Rouge contends that the tax imposed by the ordinance in question is a tax, under the authority of Art. X, Sec. 8 of the Constitution, on the privilege of pursuing a trade, occupation, vocation or profession and is not a tax upon the sale of gasoline and other motor fuels; that it is a separate and distinct tax from one directly imposed on the merchandise or other property sold in the conduct of any such trade, business or occupation, the volume of business as evidenced by gross sales being merely the basis upon which the tax is graduated.
At the outset it may be stated that the issue here presented does not involve the validity of the ordinance vel non, but only its specific application to one phase of business, the sale of gasoline and other motor fuels by service station operators.
A direct tax is defined in Ballentine's Law Dictionary, 1930 Ed., supplemented to 1954, p. 378 as: "A capitation tax or a tax on real or personal property by reason of its ownership whether based on its value or not."
In defining an indirect tax, Ballentine's Law Dictionary, pp. 635 and 636, draws a clear distinction between a direct and an indirect tax as follows:
"All taxes, other than polls, are either direct or indirect. A direct tax is one that is imposed directly on property according to its value. It is generally spoken of as a property tax, or an ad valorem tax. An indirect tax is a tax upon some right or privilege, and it is also called an excise or occupation tax."
The definition and discussion of an excise tax found in Ballentine's Law Dictionary, supra, p. 460 is as follows:
"In its original sense, an excise was something cut off from the price paid on a sale of goods, as a contribution to the support of the government, but in its broader meaning it now includes every form of taxation which is not a burden levied directly upon persons or property, every form of charge imposed by public authority for the purpose of *116 raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation."
Although an excise tax may partake of the nature of a license tax, the former has a wider and more comprehensive meaning. We find the term license tax is defined and discussed in Ballentine's Law Dictionary, supra, p. 756:
"The term implies a burden on that which is not property, but results from the enjoyment or the conduct of the business or calling, or on a civil right and privilege.
"It is a tax imposed on the privilege of exercising certain callings, professions or vocations, that, when collected, goes into the public treasury. Such taxes are levied for both revenue and regulation."
The term "privilege tax" is defined in Ballentine's Law Dictionary, supra, p. 1018:
"The term is synonymous with the term `excise tax' and the two are often used synonymously. Taxation of the privilege is upon the occupation or activity carried on amid the social, economic and industrial environment, under the protection of the state."
From the foregoing it is manifest that the terms "excise tax", "license tax" and "privilege tax" are synonymous and are used interchangeably to the extent that they are all "indirect taxes" which are imposed upon the acts of persons, whereas a "direct tax" is one which is imposed upon the persons themselves or upon the property owned by them. It is equally manifest that an "excise" or "privilege" tax may be a tax on any act of a person, whereas a "license tax" is generally taken to have the limited meaning of a tax upon a person's business or occupation.
These well-settled distinctions between direct taxes such as excise, license and privilege taxes, and direct personal and property taxes have met with full acceptance in our jurisprudence.
In the case of State ex rel. Guillot v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 358, this Court said:
"A license may be defined as a permit granted by the sovereign, generally for a consideration, to a person, firm, or corporation to pursue some occupation or to carry on some business which is subject to regulation under the police power of the government."
The early case of Merriam v. City of New Orleans, 14 La.Ann. 318, involved an attack on a municipal ordinance levying a license tax on every keeper of a billiard table, the amount of the tax being measured by the number of tables. Plaintiff contended that the tax was a property tax on the tables and not a license or privilege tax for the use of the tables in the taxpayer's business, and hence the ordinance was unconstitutional. We held this contention untenable and that the clear intention of the Legislature was to impose a license tax upon the particular calling or business of operating a billiard table for public use, and not a tax upon the table itself.
The case of Hodgson v. City of New Orleans, 21 La.Ann. 301, wherein the Merriam case was cited and quoted with approval, a municipal ordinance levied a tax on every keeper of a warehouse where produce, goods, wares or merchandise were received for storage. We held that the tax was a license tax upon the particular calling or business of keeping a warehouse and not a tax upon the warehouse itself.
The case of State v. Heymann, 178 La. 479, 151 So. 901, involved the levying of a license tax on the business of operating an office building. We held that the tax was not a direct tax upon the property but a license tax upon the business in which the property was used or employed.
The case of State ex rel. Porterie v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, *117 779, 103 A.L.R. 9, involved the interpretation of a statute levying an "excise, license, or privilege" tax on the use of electrical and mechanical power, and in the creation thereof through the operations of machines. The defendant contended that the tax in reality was not upon the business or occupation of the user of the machines but was a direct tax upon the only thing of value in the machines, their use, and hence was a property tax. We held the tax so levied to be not a property tax but an exercise tax, saying:
"The distinction between a property tax and an excise tax is set forth in Cooley on Taxation * * *, as follows, viz:
"`* * * If the tax is directly on property itself, the tax is a property tax; but a tax is an excise tax rather than a property tax where it is not a tax on property as such, but upon certain kinds of property, having reference to their origin and their intended use. Another thing to be noted, it has been said, is that the obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking.'"
The phrase "license tax" implies a burden on that which is not property, but results from its enjoyment or the conduct of the business or calling, or on a civil right and privilege. 17 R.C.L., p. 474.
In the case of Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11, 18, we had before us a question as to whether a sales tax was an excise tax or a license tax and distinguished between the two taxes as follows:
"The license tax is paid by the party granted the privilege of pursuing a business, trade, vocation, calling, occupation or profession."
In that case we concluded that a sales tax was an excise tax rather than a license tax and in that respect we said:
"Some of the other prominent elements of difference between a `license' and a `sales' tax are that the former is levied on the gross annual sales of the dealer, whereas, the latter is levied on each transaction of the purchaser, user or lessee; * * *"
We also definitely found and concluded in the Mouledoux case that the term "license tax" has a well-defined legal meaning in this State, i.e., a license tax.
It is too plain for discussion that the license taxes authorized under the provisions of Art. X, Sec. 8 of the Louisiana Constitution are confined and limited to those classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession. When a license tax is levied on such occupations or businesses, it is a tax levied on the activity or occupation of selling or otherwise dealing in or with certain property and perforce becomes a license, excise or privilege tax on the activity or occupation and not a direct tax on the property. It must be conceded that neither our general law nor our well-known jurisprudence recognizes an "excise", "license" or "privilege" tax on property. It therefore becomes apparent that the tax levied by the Baton Rouge City Ordinance is not upon the gasoline itself as a property but is an excise, license or privilege tax levied upon the activity or occupation of selling at retail prices or otherwise dealing with gasoline or other motor fuels, i.e., an occupational license, excise or privilege tax which unmistakably means a tax upon the privilege of pursuing the said vocation or business or calling. Such an occupational tax has none of the attributes of an ad valorem tax. The tax does not fall upon the owner merely because *118 of ownership. It is not measured by the value of gasoline and is not laid directly upon the property itself. The value of the gasoline may fluctuate at will by the amount per gallon but the tax remains constant.
It is the contention of counsel for the City of Baton Rouge that an excise tax upon gasoline and an occupational license tax upon the privilege of engaging in the service station business based upon gross sales, including gross sales from gasoline, are not the same, submitting that the City is prohibited from doing the one but not the other. As previously observed, when an excise tax is imposed it is not a tax levied upon property but a tax levied upon the privilege of engaging in the activity or occupation of pursuing a trade, business or vocation. If a tax is levied on gasoline itself of necessity it becomes a direct property tax and not a tax on the activity of selling or otherwise dealing in gasoline.
Patently, Sec. 24.1 of Art. XIV of the Louisiana Constitution prohibits taxation by political subdivisions of the activity or occupation of dealing in motor fuels. Its prohibition against "excise, license or privilege" taxes covers the entire field of indirect taxes which may be levied on said activity or occupation. As previously observed, these three forms of indirect taxes, though used interchangeably, refer to and mean a tax levied upon the activity, occupation or privilege of selling or otherwise dealing in gasoline or other motor fuels.
Were we to construe the provisions of Sec. 24.1 of Art. XIV to mean something other than a prohibition against the levying of an excise, license or privilege tax on the activity or occupation of selling or otherwise dealing in gasoline, kerosene or other combustibles used in the generation of motive power, it would be tantamount to charging the Legislature with heedlessness and inattentiveness in the enactment of proposed changes in our organic law. However, we will not presume that the Legislature intended absurd consequences and will not give this constitutional article a construction which will lead to absurdities. It is axiomatic that in the construction and interpretation of statutes all of its parts, each words, each phrase and each clause is intended to have a meaning and that none contained therein is inserted by mere inadvertence. State v. Texas Co., 205 La. 417, 17 So.2d 569.
Furthermore, to construe the Constitutional provision as contended for by the City of Baton Rouge would in effect read out of its provisions the words "excise, license or privilege" and thus do violence to the principle that all of the words of a statute should be given effect.
We conclude that Art. XIV, Sec. 24.1 clearly prohibits the imposition by political subdivisions of excise, license and privilege taxes on the occupation of selling or otherwise dealing in motor fuels; and since the occupational license, privilege or excise tax sought to be levied by the City of Baton Rouge is clearly a tax on the privilege of pursuing the activity or occupation of selling or otherwise dealing on gasoline or other motor fuels said tax is in direct conflict with the prohibition contained in Art. XIV, Sec. 24.1. Thus it follows that the City may not impose an occupational license on that part of plaintiffs' business which consists of selling or otherwise dealing in gasoline or other motor fuels, and any tax levied upon plaintiffs' gross receipts must exclude the proceeds of sales of gasoline, kerosene or other motor fuels in computing the license, privilege or excise tax levied by the ordinance herein.
Accordingly, for the reasons assigned, the judgment of the district court is hereby reversed, annulled and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs and against defendant decreeing that plaintiffs are entitled to occupational licenses to operate service stations in the City of Baton Rouge, without the necessity of including. *119 in their gross sales the sales of gasoline and other fuels used in the generation of motive power, in the computation of said occupational license tax. All costs herein are to be borne by the defendants.
HAMITER, J., concurs in the decree.
McCALEB, J., dissents with written reasons.
MOISE, J., absent.
McCALEB, Justice (dissenting).
I am in accord with the conclusion of the district judge and that of the Court of Appeal for the Parish of Orleans in Cosse v. City of New Orleans, 99 So.2d 508, wherein the identical question here involved was presented for determination. The views I entertain probably stem from a different process of reasoning but the result reached is the same, i.e., that the amendment of 1940 to Section 24.1 of Article 14 of the Constitution, denying to municipalities and other political subdivisions the power to levy excise, license or privilege taxes upon gasoline, etc., was never intended to curtail or restrict the power of these political subdivisions, specially granted by Section 8 of Article 10 of the Constitution, to levy occupational license taxes upon retail dealers in gasoline and other motor fuels.
The pertinent language of the amendment is that "No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, * * *". If this provision is applied as written without the aid of judicial interpretation, there could be hardly any doubt that it would not govern this case since the tax levied by the City of Baton Rouge is an occupational license on plaintiff as a retail dealer, the amount of which is based on his gross sales, including sales of gasoline and, therefore, is not in any sense a tax on the gasoline itself. However, in view of the use of the words "excise, license or privilege" in describing the kind of tax which may not be levied on gasoline or other motor fuel by a municipality or political subdivision, the amendment indicates that the prohibition was not intended to be levelled against the assessment of a direct or ad valorem tax on gasoline or motor fuel itself, as literally stated, but, rather, as the majority opinion so aptly points out, a prohibition against the assessment of an indirect tax or excise on the privilege of selling, using, consuming, etc., of gasoline or motor fuel. To thus conclude requires construction; the law cannot be enforced according to its letter.
Accordingly, it follows that, due to the inaccuracy of the language used in Section 24.1 of Article 14, the provision cannot be regarded as free from ambiguity and must be construed and interpreted in order to ascertain its true meaning. When this is done, it becomes manifest that the provision was never intended as a restriction upon the right of political subdivisions to impose occupational license taxes on retailers of gasoline based on their gross sales of the fuel.
It is provided by Article 18 of our Civil Code that:
"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."
This Court has employed this article on numerous occasions in its interpretation of legislative acts and constitutional provisions. In one of the comparatively recent cases, State v. Alden Mills, 202 La. 416, 12 So.2d 204, the Court, relying on Article 18 as the basis for its decision, construed, as retrospective in its operation, an amendment to Section 19 of Article 19 of the Constitution providing that all taxes and licenses prescribed in three years from their due date.
*120 Application of this principle of construction to the case at bar leaves no doubt whatever that the purpose of Section 24.1 of Article 14 of the Constitution, as last amended by Act 395 of 1940, was to withdraw from the City of New Orleans and other political subdivisions the right which the City and the parishes had previously enjoyed of levying an excise tax, similar to that of the State, on gasoline and other motor fuels sold by dealers to the consumer.
The history of Section 24.1 of Article 14 makes this self evident. The original legislation, authorizing the levy of a motor fuel tax by any municipality was Act 180 of 1924. This law, which was adopted on November 4, 1924 as an amendment to Section 24 of Article 14 of the Constitution, created a special paving fund for the City of New Orleans dedicated to the city's proportion of the cost of pavement of streets and roadways and authorized the levy of a one cent per gallon tax on all gasoline or other motor fuel sold in the city for the maintenance of said fund. Thereafter, by Act 15 of the Extra Session of 1928 (which was amended by Act 72 of 1934; Act 21 of the First Extra Session of 1934 and Act 32 of the Second Extra Session of 1934) and Act 31 of the Second Extra Session of 1934, the police juries of each parish, as well as the City of New Orleans, were empowered to levy a one cent motor fuel tax.
In 1936, by Act 87 thereof, Act 15 of the Extra Session of 1928 and Act 31 of the Second Extra Session of 1934 were repealed and thus the power delegated to the parishes and the City of New Orleans to levy motor fuel excise taxes was withdrawn and a motor fuel tax to be levied by the State was substituted therefor. Notwithstanding this, the City of New Orleans was successful in having a constitutional amendment (proposed by Act 341 of 1936) adopted on November 3, 1936, as a supplement to Section 24 of Article 14 of the Constitution, authorizing it to levy a tax of two cents per gallon on all gasoline or motor fuels sold, used or consumed in the City.
It is indisputable that it was because of the existence of this constitutional amendment that the Legislature found it necessary in 1940 to submit a proposal (Act 395 of 1940) to again amend Section 24.1 of Article 14 by substituting therefor the present provision that no excise, license or privilege tax may be levied by any municipality or public subdivision on gasoline or other motor fuel. This was carried out conformably with the legislative policy, signified for the first time by Act 87 of 1936, of having all excise taxes on motor fuels levied and collected by the State itself to the exclusion of its municipalities and political subdivisions.
Since it appears that the sole and only purpose for the adoption of the constitutional provision now relied on by plaintiff was to withdraw from municipalities and other subdivisions the right to levy taxes on the sale, use and consumption of motor fuel, it is equally evident that the 1940 amendment did not and was never intended to affect the power delegated to these bodies to collect the occupational license taxes from retail dealers in gasoline, based on the computation of their gross sales.
Finally, plaintiff's counsel lay stress on the circumstance that the constitutional prohibition is against the levying of a "license" as well as an excise tax and from this it is argued that the amendment necessarily includes a prohibition against the levying of an occupational license tax based on the gross sales of gasoline.
The majority opinion gives efficacy to this proposition but I find little merit in it. The word "license", when used in connection with "excise" or "privilege" taxes in legislation of this sort is generally employed interchangeably in describing an indirect tax without particular significance as to its nature. See Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341; Louisiana *121 State Dept. of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202 and Giamalva v. Cooper, 217 La. 979, 47 So.2d 790, 793.
In the last cited case, contention was made that, since the statute imposed an occupational license tax on the slot machine business, the tax was illegal because it conferred a privilege on the taxpayer to engage in the gambling business in violation of the Constitution. But we rejected this argument, stating that "The fact that the excise is denominated a license is of no importance in determining the true nature of the tax. * * * In final analysis, they are excises as distinguished from property taxes." So, in this case, the use of the word "license" affords no good ground for attributing a legislative intent to prohibit the levy of an occupational license tax on retail dealers of gasoline computed on their gross sales.
I respectfully dissent.

On Rehearing.
TATE, Justice.
As more fully set forth in our original opinion herein, the issue in this declaratory judgment action against the City of Baton Rouge and its Treasurer is whether the City's statutory requirement that gasoline retailers include the sales of gasoline and other motor fuels in computing their gross sales by which their annual local occupational license tax is measured violates the prohibition found in Article XIV, Section 24.1, La.Constitution, LSA.:
"No parish, municipality or other political subdivision, shall levy an excise, license or privilege tax upon gasoline * * *"[1] (Italics ours.)
In our original opinion we held that the constitutional prohibition did extend to a municipal occupational license tax measured by the sale of gasoline because such a tax, not being upon gasoline itself but upon the activity of occupation of retailing gasoline, was by definition an excise, license, or privilege tax.
On rehearing, conceding that the local tax in question is an excise, license, or privilege tax relating to gasoline, the City contends that nevertheless such contested levy is not within the scope and intent of the constitutional prohibition found in Section 24.1, Article XIV, La.Constitution, which the City now admits to be ambiguous and imprecise in description.
With exceptions and distinctions not here material, "excise taxes" are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges," 1 Cooley Taxation (4th ed. 1924) 42 at p. 127, as contrasted with "property taxes" or "poll taxes" which are levied directly upon property itself or upon persons themselves. 1 Cooley, Sections 38, 39, 40, 42, 45, 46, 50. That is, as stated in our original opinion, "the terms `excise tax', `license tax' and `privilege tax' are synonymous and are used interchangeably[2] to the extent that they are all `indirect taxes' which are imposed upon the acts of persons, whereas a `direct tax' is one which is imposed upon the persons themselves or upon the property owned by them."
Properly speaking, the term "excise, license, or privilege tax upon gasoline" *122 has no meaning, since such taxes are those which are levied upon acts or activities and not upon things (such as gasoline) themselves. It therefore becomes a proper subject of judicial inquiry to ascertain the legislative intent as to just what acts or activities relating to gasoline were or were not removed from the purview of local taxing authority by the constitutional provision in question.
For although a court may not disregard the letter of an unambiguous law by a resort to the legislative intent (LSA-C.C. Art. 13), on the other hand when the application of a law is uncertain because of dubious or imprecise expressions therein, its true meaning may properly be ascertained by examination of its terms with reference to the legislative and constitutional intent and in their context with relation to other legislative and constitutional enactments pertaining to the same subject matter. LSA-C.C. Arts. 16, 17, 18; Melancon v. Mizell, 216 La. 711, 44 So.2d 826; State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385; Mills v. City of Baton Rouge, 210 La. 830, 28 So.2d 447; Curatorship of Parks, 210 La. 63, 26 So.2d 289, 173 A.L.R. 1056; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; State v. Alden Mills, 202 La. 416, 12 So.2d 204; Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163.
Section 24.1 of Article XIV was first added to our Constitution, after approval by the people, by Act No. 180 of 1924. This amendment created a "Special Paving Fund for the City of New Orleans" and provided that the fund was to be derived from (a) a tax of one cent (1¢) per gallon "On gasoline, when sold or purchased for consumption in the Parish of Orleans" and (b) a tax "On all kerosene, or other explosives used for the generation of motive power", both taxes "to be collected as provided by law for the collection of the State tax on gasoline or other motor fuel sold in the State of Louisiana."[3]
This constitutional section was amended and reenacted by approval of the people of Act No. 341 of 1936, which contained further provisions regulating what was now denoted as the "Special Paving and Permanent Public Improvement Fund for the City of New Orleans"[4] to be derived from taxes (or the funding thereof) levied by the Commission Council of New Orleans (a) of two cents (2¢) per gallon "On gasoline, benzine, naptha and other motor fuels as defined by the laws of the State levying State taxes upon such commodities, *123 when sold, used, consumed or purchased for consumption in the City of New Orleans," (b) "On all kerosene", and (c) "On all other explosives used in the generation of motive power". This version further provided that such taxes were "to be collected in the same manner as provided by Act No. 15 of the Extra. Session of 1928", which latter statutory enactment authorized parishes through governing bodies "to levy a tax * * * not to exceed, in any one year, one (1) cent per gallon on gasoline or other motor fuel sold, used or consumed within the territorial limits of such parish."[5]
It is of interest to note that in opinions of this Court and of the Attorney General, prior to the repeal of these versions of Section 24.1 by Act 395 of 1940 (which sets forth the present version of the constitutional provision), the type of excise tax on gasoline contemplated therein and by Act No. 15 of the Extra. Session of 1928 was referred to as a "tax on gasoline"[6] or as a "one cent per gallon tax on gasoline and motor fuel",[7] without the qualification that said excise tax was upon gasoline sold or consumed and not upon the gasoline itself.
Act 395 of 1940, when ratified by the people, repealed the earlier versions of Section 24.1 and provided the present text.[8] As previously noted, the meaning of the prohibition therein that no local government "shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power" cannot be ascertained solely by reference to the constitutional enactment because an excise, license or privilege tax is not upon a thing (gasoline) but upon some activity or occupation with respect thereto. Thus, strictly speaking, an occupational license tax is not "an excise, license or privilege tax upon gasoline"; but *124 to end our inquiry there (as the City would have us do) we would in contravention of the presumption of validity and meaning to constitutional and legislative enactments conclude that the legislature had submitted and the people had ratified a meaningless provision, since neither can there be any other "excise, license or privilege tax upon gasoline." Our inquiry must therefore be directed to just what excise, license or privilege taxes relating to gasoline are by the constitutional enactment prohibited to local governments; or, more precisely, to whether the constitutional prohibition includes within its orbit municipal occupational license taxes measured by the amount of gross sales which, insofar as they apply to gasoline retailers, include gross sales of gasoline.
LSA-Civil Code, Article 18 provides:
"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."[9]
In determining the meaning and legislative intent of an enactment, it is proper to resort to the established policy of the legislature as disclosed by the general course of legislation relating to the subject matter of the enactment and the legislative history thereof. Melancon v. Mizell, 216 La. 711, 44 So.2d 826; Malone v. Cannon, 215 La. 939, 41 So.2d 837. The earlier versions of Section 24.1 and related legislation were concerned solely with an excise tax on gasoline and other motor fuels sold by the dealer to the consumer, which indeed was sometimes officially described as a "tax on gasoline." From this circumstance we conclude that the "excise, license or privilege tax upon gasoline" prohibited to local governments by the Constitutional enactment before us were intended to include taxes directly upon the sale or consumption of gasoline and were not intended to include non-discriminatory occupational license taxes measured by the sale of gasoline such as that levied by the present municipal ordinance.
Appellant retailers' contention that the constitutional exemption of gasoline from excise, license or privilege taxes should be regarded as having the legislative intent to exempt all activities relating to gasoline from any excise taxation whatsoever, fails to find support in the legislative history of the enactment and further overlooks the well recognized doctrine of statutory construction that an exemption from taxation is strictly construed and must be clearly and unequivocally and affirmatively established. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So. 2d 477; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; State v. Pittsburgh Testing Laboratory, 203 La. 147, 13 So.2d 710; Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634.
Further, where (and of course only where) the construction or application of a statute is doubtful, great weight in the judicial interpretation thereof should be given to the construction consistently given a statute by those charged with applying it administratively. Hester v. Louisiana Tax Commission, 227 La. 1022, 81 So.2d 381; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Jackson v. Coxe, 208 La. 715, 23 So.2d 312; State v. Standard Oil Co., 190 La. 338, 182 So. 531. And we are reinforced in our conclusion that the constitutional exemption of gasoline from local excise taxation was not intended to exempt gasoline retailers from a local occupational license tax by the contemporaneous and subsequent construction accorded by the executive departments of our State and local governments to such *125 tax enactments and the exemption provision.
Occupational license taxes by the State and by local governments are authorized by Article X, Section 8, La.Constitution (which has remained unchanged since 1934), which also provides that "No political subdivision shall impose a greater license tax than is imposed for State purposes." Pursuant thereto, the State's occupational license tax upon retail dealers has consistently been measured by gross salesin the case of gasoline retailers, including of gasoline. LSA-R.S. 47:353.
It is conceded that insofar as gasoline retailers were concerned, the municipal and parochial occupational license taxes authorized by LSA-R.S. 47:397 and its predcessors have, until the present, been similarly measured. Cf. also, Opinions of Attorney General 1956-1958, p. 865. For instance, an opinion of the Attorney General held that the gallonage taxes collected by the retailer must be included in the gross receipts from the sale of gasoline which measure the local occupational license tax of filling stations (Opinions of Attorney General 1944-1946, p. 995); whereas, had the construction contended for by appellants been in effect, not only the gallonage taxes upon gasoline sold, but the entire proceeds received by the retailer from the sale of gasoline should have been excluded from the gross receipts used to measure the local occupational license tax.[10]
Finally, appellants urge that, under the rule of construction that all provisions of and terms used in a statute should if possible be given effect since all are presumed to have some legislative meaning and none to be inserted by inadvertence (State v. Texas Co., 205 La. 417, 17 So.2d 569), the constitutional prohibition against "license taxes" upon gasoline must include an intent to prohibit local license taxes because the principal if not only type of license tax per se relating to gasoline is an occupational license tax such as the present municipal levy.
Conceding the forcefulness of this argument, we nevertheless conclude that in view of the legislative history of the enactment the inclusion of the term "license" in the descriptive phrase "excise, license or privilege tax upon gasoline" must be viewed as a usage of these sometimes synonymous terms simply to describe generically excise or indirect taxes[11] relating to the sale or use of gasoline, rather than an attempt to specify different types of taxes prohibited.
Having thus found that the "excise, license or privilege tax upon gasoline" prohibited to local governments by Article XIV, Section 24.1, La.Constitution, do not include non-discriminatory occupational license taxes measured by the sale of gasoline, our original decree herein is recalled and set aside; and the judgment of the District Court dismissing plaintiffs' suit is affirmed.
Affirmed.
SIMON, J., dissents and adheres in the original opinion rendered May 26, 1958.
NOTES
[1] This procedure was adopted in Louisiana Wholesale Distributors Ass'n, Inc., v. Rosenzweig, 214 La. 1, 36 So.2d 403; Burton v. Lester, 227 La. 347, 79 So.2d 333, and Lacy v. Employers Mutual Liability Insurance Co. of Wisconsin, 233 La. 712, 98 So.2d 162.
[2] This ordinance is clearly stated as City Ordinance #588 adopted by the City Council of the City of Baton Rouge on December 12, 1956.
[1] This prohibition also applies to "kerosene or other combustibles used in the generation of motive power." For simplicity in discussion in this opinion, wherever appropriate, reference to taxes on "gasoline" shall include also taxes upon the other motor fuels falling within the prohibition.
[2] Cf., 1 Cooley, Sec. 45 at pp. 129-130: "An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, or business taxes. There is no clear line of demarcation between so-called `license', `occupation', and `privilege' "taxes."
[3] The title of said Act 180 of 1924 is as follows: "Joint Resolution Proposing an amendment to the Constitution of the State of Louisiana providing for the creation of a Special Paving Fund for the City of New Orleans and dedicating said Fund to the payment of the City's proportion of the cost of pavement of streets and roadways, including sub-surface drainage, as now or may hereafter be provided by law and for the maintenance and repair of streets, and providing the sources from which said Fund shall be derived."
[4] The title of said Act No. 341 of 1936 is as follows: "A Joint Resolution Proposing an amendment to the Constitution of the State of Louisiana, by amending and re-enacting the provisions of Act No. 180 of 1924, adopted as an amendment to the Constitution of the State of Louisiana, (Dart's Section 24.1 of Article XIV) providing for the creation of a Special Paving and Permanent Public Improvement Fund for the City of New Orleans and dedicating said Fund to the payment of the City's proportion of the cost of paving, repaying, surfacing and resurfacing of streets, as such terms now are or may hereafter be defined in the Charter of the City of New Orleans, and for the maintenance and repair of streets and for permanent public improvements, providing the taxes from which said Fund shall be derived, and authorizing the City of New Orleans to fund said taxes into bonds, notes, certificates or other evidences of debt, and providing for the submission of said amendment to the electors of the State for their approval or rejection."
[5] Act 15 of the Extra.Session of 1928 was amended by Acts 72 of 1934, Act 21 of the First Extra.Sess. of 1934 (which permitted the City of New Orleans also to levy such a tax), and Act 32 of the Second Extra.Sess. of 1934. Both this enactment as amended and Act 31 of the Second Extra.Sess. of 1934 (permitting the parishes and the City of New Orleans to levy an additional tax of one cent per gallon), were repealed by Act 87 of 1936, which provided that in lieu of the taxes heretofore levied by virtue of these enactments, there should be a tax collected by the State of two cents per gallon "on all gasoline or motor fuel, sold, used or consumed in the State of Louisiana."
[6] City of New Orleans v. Paciera, 180 La. 869, 873, 158 So. 1, 2; Cf. Weixel & Janssen v. City of New Orleans, 184 La. 651, 167 So. 179, 180, wherein the similar imposition upon the sale or consumption of kerosene is spoken of several times as a "tax on kerosene" in the majority and dissenting opinions.
[7] Opinions of the Attorney General 1936-1938, p. 1040. Cf. Opinions of Attorney General 1932-1934, p. 935, where said tax is referred to as a "gasoline tax."
[8] The title of said Act No. 395 of 1940 is as follows: "A Joint Resolution Proposing an amendment to the Constitution of Louisiana by repealing and striking therefrom the Section added by the provisions of Act 180 of 1924, adopted as an amendment to the Constitution of Louisiana on November 4, 1924, as amended by the provisions of Act 341 of 1936, adopted as an amendment to the Constitution of Louisiana on November 3, 1936, providing for the creation of a Special Paving Fund for the City of New Orleans and dedicating said fund to the payment of the city's proportion of the cost of paving streets and roadways including sub-surface drainage as now or may hereafter be provided by law, and for the maintenance and repair of streets and providing the sources from which said funds shall be derived and authorizing the City of New Orleans to fund said taxes into bonds, notes, certificates or other evidences of debt, by substituting therefor a new section to be designated as Article XIV, Section 24.1, providing that no parish, municipality or other political subdivision shall levy any tax upon gasoline, kerosene or other combustibles used in the generation of motive power and that nothing in this Constitution shall be construed to limit the right of the Legislature to levy state taxes on the same."
[9] Constitutional provisions are construed and interpreted by the same rules as are other laws. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So. 2d 477.
[10] In response to this ruling by the Attorney General (apparently indicating concurrence to the extent that the sales price, less taxes, of gasoline should be included in the gross receipts for the purpose of measuring the State and local occupational license taxes), the next Legislature immediately enacted as the last paragraph to Act 18 of 1946 (now found as the last paragraph of LSA-R.S. 47:353) the proviso that gasoline retailers should exclude in calculating gross sales an amount equal to any State and Federal "license, privilege or excise tax."
[11] See, e.g., City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6; Giamalva v. Cooper, 217 La. 979, 47 So.2d 790, and cases therein cited; State ex rel. Porterie v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9.